**CAPITOL INDEMNITY CORPORATION, Plaintiff–Appellant,**

v.

**Vivian BRAXTON and Otis Braxton, Individually and d/b/a Pee Wee Wisdom Learning Center, Preston Young, Sherita Mann, Butch Haywood Phipps, and National Indemnity Company of the South, Defendants–Appellees.**

No. 00–5838, 00–6070.

United States Court of Appeals, Sixth Circuit.

Dec. 6, 2001.

Before SILER and CLAY, Circuit Judges; and GRAHAM, District Judge.[*]

GRAHAM, District Judge.

In this declaratory judgment action, plaintiff Capitol Indemnity Corporation ("Capitol") appeals the district court's finding that Capitol is required to defend and indemnify its insureds in a wrongful death action. Because we conclude that the district court erred in holding that the automobile exclusion of Capitol's general insurance policy did not relieve Capitol of the obligation to defend and indemnify its insureds in the wrongful death action, we REVERSE.

## BACKGROUND

Capitol issued a commercial general liability insurance policy to Vivian Braxton and Otis Braxton, d/b/a Pee Wee Wisdom Learning Center, defendants herein [hereinafter "insureds"], which was in effect on July 21, 1999. The Pee Wee Wisdom Learning Center is a child day care center located in Memphis, Tennessee. An employee of the insureds, Preston Young, was tasked with transporting children to and

[*] The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

from the day care center. On July 21, 1999 Young operated a van to pick up children, including the minor child Brandon Mann ("Brandon"), and deliver them to the day care center. Upon arriving at the day care center, Brandon was not removed from the van and remained in the van all day. As a result of the extreme heat inside the van, Brandon died of hyperthermia. Brandon's parents, defendants herein ·[hereinafter "claimants"], brought a wrongful death action against the insureds and Preston Young in Tennessee state court.

The wrongful death complaint alleges common law negligence, to wit: that the insureds and their employees failed to take roll, count heads, inspect the van, or make any inquiry to ascertain whether Brandon had been removed from the van; and statutory negligence, on the grounds that the insureds violated the mandates of the rules of the Tennessee Department of Human Services applicable to day care centers, which, according to claimants, constitutes negligence *per se.*

Thereafter, Capitol brought this action seeking a declaration that the commercial general liability insurance policy it issued to the insureds did not impose a duty upon Capitol to defend or to indemnify the insureds in the wrongful death action. Joined as defendants in the action were the insureds and their employee, Young; the claimants; and National Indemnity Company of the South ("National"), which issued an automobile liability policy covering the van. The basis of Capitol's argument, and the argument presented on appeal, is its contention that Brandon's death arose from the use of the van, and therefore any liability is excluded under the policy's automobile exclusion. Under the exclusion, coverage does not apply to:

> g. Aircraft, Auto or Watercraft
>
> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any ... "auto" ... owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

Joint Appendix ("J.A.") at 14b.[1]

This matter came before the district court on cross motions for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). There were four motions in total—the joint motion of the insureds, a motion brought by National, claimants' motion, and a motion brought by Capitol. As discussed in greater detail *infra,* the district court concluded that Brandon's death did not arise out of the use of the van, and held that the automobile exclusion found in the Capitol policy was not applicable to the wrongful death claim. The district court declared, therefore, that Capitol was under a duty to defend and indemnify the insureds in the wrongful death action. In addition, the court found that the policy's excess insurance clause was inapplicable, thereby obligating Capitol to share primary coverage for the accident with National. The three motions for judgment on the pleadings filed by the defendants were granted, and Capitol's motion was denied. Capitol appeals that ruling.

## STANDARD OF REVIEW

■■■ The standard of review applicable to a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) is the same *de novo* standard applicable to a

---

1. The Joint Appendix contains an unnumbered page between page 14 and page 15. That page is referenced herein as page 14b.

motion to dismiss under Rule 12(b)(6). *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511–12 (6th Cir.2001). In reviewing the motion, the court must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of its claim that would entitle it to relief. *See id.*

In addition, the court reviews the district court's interpretation and application of state law *de novo*. *See Salve Regina Coll. v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991); *Ferro Corp. v. Garrison Indust., Inc.*, 142 F.3d 926, 931 (6th Cir.1998).

## DISCUSSION

The question that we must decide is whether the automobile exclusion found in the Capitol policy negates Capitol's duty to defend and indemnify its insureds in the wrongful death action. Under Tennessee law, the interpretation of an insurance contract is a matter of law to be determined by the court. *See Davidson Hotel Co., v. St. Paul Fire & Marine Ins. Co.*, 136 F.Supp.2d 901, 905 (W.D.Tenn.2001) (applying Tennessee law). Exclusions in insurance policies must be strongly construed against the insurance company and in favor of the insured. *See Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 886 (Tenn.1991); *Travelers Ins. Co., v. Aetna Cas. & Sur. Co.*, 491 S.W.2d 363, 367 (Tenn.1973). These clauses should not, however, "be so narrowly construed as to defeat their evident purpose." *Tomlinson v. Bituminous Cas. Corp.*, No.96–5944, 1997 WL 397248, at *1 (6th Cir. July 10, 1997) (applying Tennessee law).

Based on the principles stated above and on what we believe to be an overly narrow interpretation of the automobile exclusion found in the Capitol policy, the district court found that Brandon's death did not arise out of the use of the van, and therefore held that Capitol was required to provide coverage. Because we conclude that the use of the van was the efficient and predominate cause of Brandon's death, we reverse.

Pivotal to our analysis is the *Allstate* decision. The issue before the court in *Allstate* was whether the duty of Allstate Insurance Co. to its insureds under a homeowner's policy was negated by the exclusion for bodily injury arising out of the maintenance of an automobile. Watts, the claimant, was assisting the insured, Crafton, and a third person to remove lug nuts from the third person's truck, which was parked partially in Crafton's garage. Watts decided to use his welding torch to facilitate the removal of the lug nuts. Before igniting the welding torch, Watts asked Crafton if there were any flammable materials in the garage. Crafton answered in the negative. As Watts was using the welding torch to cut off one of the lug nuts, resulting sparks ignited a pan of flammable liquid that was located under the truck. Crafton, in an attempt to remove the flaming pan, picked up the pan, but due to the heat, he dropped and accidently kicked the pan, whereupon flaming liquid splashed onto Watts, burning him.

Watts subsequently filed suit against Crafton alleging that Crafton was negligent in failing to warn Watts of the presence of the flammable liquids, despite having been specifically asked by Watts about the presence of such materials. Crafton was also negligent, Watts alleged, in picking up the flaming pan, dropping it, and kicking the pan. Allstate sought a declaration that the injuries to Watts arose out of the maintenance of a vehicle and there-

fore fell within the homeowner policy's automobile exclusion.

██ The *Allstate* court found that Watts's injuries did not arise out of the maintenance of the truck, and therefore held that Allstate was required to provide coverage. In reaching this conclusion, the court rejected the "chain of events" theory of causation, which relies on a but-for theory of causation. *See Allstate*, 811 S.W.2d at 887. The chain of events theory is described "as looking to the chain of events leading to the damage in order to determine the proximate cause of the loss. Then, whether the proximate cause is covered or excluded determines whether the loss is covered or excluded under the policy." *Davidson Hotel Co.*, 136 F.Supp.2d at 906 (citing 10 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 148:61 (3d ed.1998)). In rejecting this theory, the *Allstate* court concluded that despite the broadness of the phrase "arising out of" found in the automobile exclusion, coverage is not excluded whenever there is *any* causal connection between the vehicle and injury. *See Allstate*, 811 S.W.2d at 887. Otherwise, according to the *Allstate* court, it would be "difficult to conceive of a rule that draws a justifiable line between coverage and no coverage at any reasonable point." *Id.*[2]

██ The Tennessee Supreme Court instead adopted a variation of the "concurrent causation doctrine." The concurrent causation doctrine provides "that coverage under a liability policy is equally available to an insured whenever an insured risk constitutes a concurrent proximate cause of the injury." *Id.* at 886. Put differently, the concurrent causation doctrine allows for recovery when:

> [T]he loss is essentially caused by an insured peril with the contribution of an excluded peril merely as part of the chain of events leading to the loss[.] Thus, under a policy insuring against property loss "directly" resulting from a particular cause or risk, but excluding coverage against loss by certain enumerated other causes, the insurer's contention that coverage does not exist since an excluded risk combined with an included risk to bring about the loss is without merit.

*Davidson Hotel Co.*, 136 F.Supp.2d at 905–06 (quoting 10 RUSS & SEGALLA, *supra*, § 148:61).

██ The *Allstate* court set forth the manner in which the concurrent causation doctrine is to be applied in Tennessee:

> While there are a variety of ways to analyze the problem before us, this Court is persuaded that there should be coverage in a situation such as in the instant case, where a nonexcluded cause is a *substantial factor* in producing the damage or injury, even though an excluded cause may have contributed in some form to the ultimate result and, standing alone, would have properly invoked the exclusion contained in the policy.

> \* \* \* \* \* \*

---

2. To illustrate its point, the court stated:

> Adopting Allstate's interpretation of "arising out of" to include *any* causal relationship would exclude coverage if, for example, Watts had gone into Crafton's home to retrieve a tool to aid in removing the lug nuts, and fell down a flight of stairs. Arguably, at least, maintaining the vehicle would have set in motion the chain of events that produced the eventual result. That is, but-for the difficulty encountered in maintaining the brakes on the truck, Watts would not have been inside of the home when he fell in order to obtain the tool. The problem with this approach is that cause and effect extend to near infinity. *Id.*

[A]n insurer should not be excused from its obligation under a homeowner's policy unless it has been determined that the loss being complained of did not result in *substantial part* from a risk for which it provided coverage and collected a premium.... [C]overage cannot be defeated simply because excluded risks might constitute an additional cause of the injury.

*Allstate,* 811 S.W.2d at 887, 888 (emphasis added).

In finding that the automobile exclusion did not negate Allstate's duty to provide coverage, the court did recognize that the truck was being "maintained" and that it was this maintenance, to wit: the use of the welding torch to cut off the lug nuts, that caused the fire in the pan of liquid. The court held that it could not, however, ignore the presence of the other factors causing Watts's injuries, to wit: "the placement of the flammable substance, Crafton's purported failure to warn of the substance upon specific inquiry, and the negligence in dropping and kicking the burning liquid," all of which were insured risks, "*and* [were] the acts that comprise[d] the basis of the lawsuit brought by Watts against the insured as evidenced by the allegations in the complaint itself." *Id.* at 888. According to the court, the fact that "there might arguably be a *mere connection* between using the torch and the ultimate harm, does not justify a finding of no coverage when other causal factors played a *substantial role* in producing the loss complained of by Watts." *Id.* (citing *Travelers,* 491 S.W.2d at 367) (emphasis added). The court found it important that the injuries to Watts could have occurred had Watts been using the torch to cut any number of objects in Crafton's garage that were completely unrelated to the truck. *See id.* The truck, according to the court, was "merely the situs of the purported

negligence," which was not a sufficient reason to vitiate coverage. *Id.*

A prior decision of the Tennessee Supreme Court relied upon by the *Allstate* court, and germane to the instant matter, is *Travelers,* 491 S.W.2d 363. In *Travelers,* the court was faced with an issue similar to the one before the *Allstate* court and this court in the case at bar. Specifically, the court had to decide if the duty to provide coverage under a homeowner's policy was negated by the policy's automobile exclusion when the insured's son was placing a shotgun inside his friend's automobile and the gun discharged for some unknown reason. The court held that the involvement of the automobile did not invoke the automobile exclusion.

The *Traveler s*'s court noted that the terms "use" and "loading and unloading" found in the automobile exclusion were ambiguous. *See id.* at 367. The *Traveler s*'s court held that these terms, as well as the standard of causation, must be strictly construed against the homeowner carrier. *See id.* "[F]or a homeowner's policy of insurance to exclude coverage because of use, loading or unloading of an automobile, that use, loading or unloading must be the *efficient and predominating cause* in the strict sense of those terms." *Id.* (emphasis added).

Applying this test, the court in *Travelers* concluded that the accident could have occurred anywhere, which is "the precise reason why homeowner's insurance is procured." *Id.* The court held that although the injury was connected to the use of the vehicle during the loading of the shotgun into the vehicle, that use was not the efficient and predominate cause of the injury. *See id.* Therefore, the requisite causal relationship necessary to bring the use of the vehicle within the policy's automobile exclusion did not exist. *See id.* at 367–68.

In light of *Allstate* and *Travelers*, we must look to the facts of the instant matter to determine if a nonexcluded cause was a "substantial factor" in causing Brandon's death, and also to determine whether the excluded cause, the use of the van, was only merely connected with or only contributed in some small part to Brandon's death. *See Allstate*, 811 S.W.2d at 887–88. Put differently, if the use of the vehicle was the *efficient and predominate cause* of the injury, then the automobile exclusion is triggered and the insured is under no duty to indemnify. *See Travelers*, 491 S.W.2d at 367.

The district court held that the van was not being "used" because it was not being "operated" at the time of Brandon's death since the van was parked with the engine turned off. Even construing the term "use" strongly against the insurer, *Travelers*, 491 S.W.2d at 367, we find that the district court's interpretation of the term "use" to be so narrow as to defeat the evident purpose of the exclusion. *See Tomlinson*, 1997 WL 397248, at *1.

"Use" is not synonymous with "operation." *See* 8 RUSS & SEGALLA, *supra*, § 119:15, at 119–31 to 119–32. " 'Use' involves the employment of a vehicle for some purpose or object of the use[,]" whereas " 'operation' on the other hand, involves the driver's direction and control of the vehicle's mechanism for the purpose of propelling it as a vehicle." *Id.* at 119–32.

That the exclusion states, "Use includes operation and 'loading and unloading,' " does not convince us otherwise. This phrase is not a phrase of limitation, in which "use" *only* includes "operation and 'loading and unloading.' " Instead, the term "includes" indicates a partial or incomplete list, in which "operation" and "loading and unloading" are only two possible examples of what the term "use"

encompasses. *See Alligator Enters., Inc. v. General Agent's Ins. Co.,* 773 So.2d 94, 95 (Fla.Dist.Ct.App.2000) (finding the phrase "use includes operation and 'loading and unloading' " in an automobile exclusion not to be a phrase of limitation). In *Travelers*, the court determined that the insured was making "use" of the vehicle by loading the shotgun into the vehicle, even though the vehicle was not being driven or operated at that time. *See Travelers*, 491 S.W.2d at 365. We recognize that the court made this determination in its analysis of whether the automobile policy provided coverage, but importantly the court did not retreat from this finding when considering the effect of Travelers's automobile exclusion. *See id.* at 367 ("It is clear from the facts in the instant case that . . . the injury was connected with the *use of the vehicle during the act of loading* ") (emphasis added). As mentioned previously, the court's finding that the automobile exclusion did not preclude coverage was not based on a determination that the vehicle was not being used, but instead was based on the fact that the use of the vehicle was not the efficient and predominate cause of the injury. *See id.* at 367–68.

Here, on the day in question, the van was being used to transport children. While it was being so used, the operator, Young, negligently failed to remove Brandon from the van. It was Young's negligence in using the van to transport children that caused Brandon's death. The fact that the van was parked at the time the injury occurred does not alter the fact that the injury arose out of the use of the van. If, for example, Young had parked the van in a dangerous place with the children inside while he attended to some business of his own and the van was struck by another vehicle resulting in injury to one of the children, it would seem clear

that the injury arose out of the use of the van even though it was not being operated at the time.

In the instant matter, all of the purported non-vehicular causes articulated in the wrongful death complaint are in fact vehicle-related. Young's failure to take roll, count heads, or ascertain whether the children had been removed from the van all relate to his failure to remove Brandon from the van. Here, the van was the instrumentality of the injury, and therefore this case is distinguishable from *Travelers*, in which the shotgun was the instrumentality of the injury and *Allstate*, in which the flaming pan of liquid was the instrumentality of the injury. There is no non-excluded cause in this matter that can be identified as a substantial factor in causing the damage or injury.[3]

We conclude that the use of the van was the efficient and predominate cause of Brandon's death. The insureds' failure to take roll, count heads, implement procedures to ensure that children were accounted for, or properly train their employees, would not have caused Brandon's death independent of the use of the van. *See Tomlinson*, 1997 WL 397248, at *2. Accordingly, under the concurrent causation doctrine as applied in Tennessee, we hold that Capitol is under no duty to indemnify the insureds pursuant to the automobile exclusion.

An unpublished decision of this court supports our conclusion. In *Tomlinson*, 1997 WL 397248, this court applied the concurrent causation doctrine as set forth in *Allstate*. The insureds, the Climer

Companies, and their employee, Tomlinson, were paving a public road. The insureds failed to have flagmen or road warning signs present at the paving site. In an effort to mark a path down the road for the paving vehicles, Tomlinson drove a company vehicle down the wrong side of the road and collided with another vehicle driven by McLillie. McLillie filed suit alleging twenty counts of common law and statutory negligence, including failure to warn or mark construction areas and failing to have flagmen present.

Bituminous, the Climer Companies' general liability insurer, denied coverage to the Climer Companies under the policy's automobile exclusion. The Climer Companies filed suit seeking a declaration that Bituminous was required to provide coverage because the McLillies' complaint alleged "non-vehicular" acts of negligence outside the scope of the exclusion. In affirming summary judgment for Bituminous, the court recognized that the absence of the legally-required warning markers may have contributed to the accident. The court held, however, that "[t]he clear language of the exclusion cannot be ignored. The existence of possible regulatory negligence does not eliminate the fact that the injury arose 'out of the use of an automobile.'" *Id.* at *2. According to the court, the breach of duty by the Climer Companies did not exist independent of the use of the truck, because without the use of the truck there was no need for markers or flagmen. *See id.*

Based on the foregoing, we conclude that Capitol is under no duty to indemnify the insureds in the wrongful death action

3. Plaintiff's reliance upon *St. Paul Mercury Ins. Co. v. Chilton–Shelby Mental Health Ctr.*, 595 So.2d 1375 (Ala.1992), which involved facts similar to those in this matter, is misplaced. First, the Alabama Supreme Court found the language of the automobile exclusion in the general liability policy to be unambiguous. *See id.* at 1377. This is in contrast to the finding of the *Travelers*'s court, which held that similar language was ambiguous. *See Travelers*, 491 S.W.2d at 367. Second, it is not clear that the Alabama Supreme Court applied the concurrent causation doctrine as mandated by the Tennessee Supreme Court. *See Allstate*, 811 S.W.2d at 887–88.

**444**

brought by the claimants. We must now determine if Capitol is required to defend the insureds in the wrongful death action. For the reasons set forth below, we conclude that Capitol is under no such duty.

 The district court held that Capitol was under "a duty to defend *and* indemnify" the insureds. There is a distinction, however, between an insurer's duty to defend and an insurer's duty to indemnify. *See Drexel Chem. Co. v. Bituminous Ins. Co.,* 933 S.W.2d 471, 480 (Tenn.Ct.App.1996). The *Drexel Chem Co.* court stated:

> An insurer's duty to defend is separate and distinct from the insurer's obligation to pay claims under the policy. The duty to defend is broader than the duty to indemnify. This court must review the allegations of the complaint and determine whether any of them are covered under the policy. If even one of the allegations is covered by the policy, the insurer has a duty to defend, irrespective of the number of allegations that may be excluded by the policy. An insurer may not properly refuse to defend an action against its insured unless it is plain from the face of the complaint that the allegations fail to state facts that bring the case within or potentially within the policy's coverage.

*Id.* (citations and internal quotations omitted). In determining whether Capitol has a duty to defend, we must confine our inquiry to the allegations set forth in the complaint. *See id.*

 A review of the allegations of the underlying wrongful death complaint convince us that Capitol is under no duty to defend the insureds in the wrongful death action. The allegations of common law and statutory negligence all relate to the use of the van. In accordance with our previous finding, these allegations cannot escape the policy's automobile exclusion. Accordingly, there are no facts alleged that bring this case out of the automobile exclusion and within the coverage of Capitol's policy.

### CONCLUSION

We hold that Capitol is not required to defend the insureds in the underlying wrongful death action, nor is Capitol required to indemnify the insureds for any liability arising out of the wrongful death action. Because we have determined that Capitol is under no duty to defend or to indemnify the insureds, we need not address Capitol's argument that any coverage it was required to provide was only excess coverage in light of the coverage provided by National. The judgment of the district court is reversed. We remand with instructions to the district court to deny defendants' motion for judgment on the pleadings and grant plaintiff's motion.