United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 24, 2006**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05-10981
_____

LINCOLN GENERAL INSURANCE COMPANY,

Plaintiff-Counter Defendant-Appellee,

versus

AISHA'S LEARNING CENTER,

Defendant-Counter Claimant-Appellant.

_____

On Appeal from the United States District Court
for the Northern District of Texas
Docket No. 3:04-CV-00063

_____

Before JONES, Chief Judge, and REAVLEY and PRADO, Circuit Judges.

EDITH H. JONES, Chief Judge:

Aisha's Learning Center ("ALC") challenges the district court's decision that it is not covered for injuries to a child in its care by operation of the automobile exclusion of a commercial general liability ("CGL") policy. Finding no error in the court's analysis, we AFFIRM.

## I.  Background

On September 4, 2002, a van owned and operated by ALC transported two year old Le'Yazmine McCann from her home to the daycare center in Dallas, Texas. Upon arriving at ALC, the driver did not unload Le'Yazmine along with the other children. She was

trapped in the parked van for approximately seven hours while the external temperature reached ninety-five degrees Fahrenheit. Her mother sued ALC to redress the resulting tragic injuries.

At the time of the incident, ALC was insured by two policies: a CGL policy with appellee Lincoln General and a general automobile policy with American International Insurance Company ("American International"). ALC and McCann's mother agreed to abate the proceedings to seek a determination of insurance coverage.

Taking the initiative, Lincoln General sought a declaratory judgment in federal court against ALC to enforce a CGL policy exclusion for injuries arising from the "use" of ALC's van. ALC answered and counterclaimed against Lincoln General. American International intervened, seeking a declaratory judgment that Lincoln General had the sole duty to defend ALC. McCann's mother also intervened in the coverage dispute, but she did not participate further. The district court resolved the parties' cross-motions for summary judgment in favor of Lincoln General, holding that the company owed no duty to defend or indemnify ALC, because of the CGL policy's automobile exclusion. This appeal followed.

## II. Discussion

This court reviews a district court's grant of summary judgment de novo. Evans v. City of Houston, 246 F.3d 344, 347 (5th

2

Cir. 2001). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). On a motion for summary judgment, a court must review the facts in the light most favorable to the nonmovant. Walker v. Thompson, 214 F.3d 615, 624 (5th Cir. 2000).

Insurance policies are generally controlled by the rules of construction and interpretation applicable to contracts. Nat'l Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995). Nevertheless, "[t]he court must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable...." Nat'l Union Fire Ins. Co. v. Hudson Energy Co., 811 S.W.2d 552, 555 (Tex. 1991).

In Texas, the duty to defend is distinct from, and broader than, the duty to indemnify. Gulf Chem. & Metallurgical Corp. v. Assoc. Metals & Minerals Corp., 1 F.3d 365, 369 (5th Cir. 1993). The duty to defend is governed by the "eight-corners" rule, whereby a court considers only the allegations in the underlying complaint and the terms of the insurance policy. Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex. 1997). If the petition filed against the insured, liberally construed, alleges facts within the scope of coverage, the insurer

3

must defend. Id. Doubts are resolved in favor of the insured. Heyden Newport Chem. Corp. v. S. Gen. Ins. Co., 387 S.W.2d 22, 25 (Tex. 1965). And, although the duty to indemnify is generally not ascertainable until after the insured has been held liable, it is justiciable prior to a finding of liability when the same reasons negating the duty to defend also negate any duty to indemnify. Farmers Tex. County Mut. Ins. Co. v. Griffin, 955 S.W.2d 81, 84 (Tex. 1997).

The sole issue in this case is whether McCann's injuries arose out of the "use" of ALC's van as a matter of law, thus triggering the auto exclusion provision in the CGL policy.[1] The policy excludes: '[b]odily injury' . . . arising out of the ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . owned or operated by or rented or loaned to any insured. Use includes operation and 'loading or unloading.' Lincoln General bears the burden of applying the exclusion. Northfield Ins. Co. v. Loving Home Care, Inc., 363 F.3d 523, 528 (5th Cir. 2004). If the policy is susceptible to two or more reasonable interpretations, it is ambiguous and must be strictly construed in favor of the insured to avoid the exclusion. Kelley-Coppedge, Inc. v. Highlands Ins. Co., 980 S.W.2d 462, 464 (Tex.

---

[1] ALC's American International auto policy provides a coverage limit of up to $20,000 per person and $40,000 per occurrence, stating: "[w]e will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' . . . to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'"

4

1998); see also Empire Fire & Marine Ins. Co. v. Brantley Trucking, Inc., 220 F.3d 679, 681 (5th Cir. 2000). An unambiguous policy will, however, be accorded its plain meaning. DeWitt County Elec. Co-op., Inc. v. Parks, 1 S.W.3d 96, 100 (Tex. 1999).

Texas courts define "use" broadly: "the phrase 'arising from use' is treated as being a 'general catchall . . . designed and construed to include all proper uses of the vehicle not falling within other terms of definition....'" Tucker v. Allstate Tex. Lloyds Ins. Co., 180 S.W.3d 880, 886 (Tex. App. 2005)(quoting State Farm Mut. Auto Ins. Co. v. Pan Am. Ins. Co., 437 S.W.2d 542, 545 (Tex. 1969)). The phrase "arise out of" means there is "simply a 'causal connection or relation,' which is interpreted to mean that there is but for causation, though not necessarily direct or proximate causation." Utica Nat'l Ins. Co. v. Am. Indem. Co., 141 S.W.3d 198, 203 (Tex. 2004) (citations omitted). "Use" means "to put or bring into action or service; to employ for or apply to a given purpose." LeLeaux v. Hanshire-Fannett Indep. Sch. Dist., 835 S.W.2d 49, 51 (Tex. 1992).

In Texas, "[f]or liability to 'arise out of' the use of a motor vehicle, a causal connection or relation must exist between the accident or injury and the use of the motor vehicle." Mid-Century Ins. Co. v. Lindsey, 997 S.W.2d 153, 156 (Tex. 1999)(citing LeLeaux, 835 S.W.2d at 51). Further, "the use required is of the vehicle qua vehicle, rather than simply as an article of property." Lindsey, 997 S.W.2d at 156. If the vehicle at issue "is only the

locational setting for an injury, the injury does not arise out of any use of the vehicle." Id. Lindsey approved a list of factors to determine whether an injury falls within the "use" coverage of an automobile policy:

> . . . (1) the accident must have arisen out of the inherent nature of the automobile, as such, (2) the accident must have arisen within the natural territorial limits of an automobile, and the actual use must not have terminated, (3) the automobile must not merely contribute to cause the condition which produces the injury, but must itself produce the injury.

Id. at 157.

Lindsey demonstrates just how broadly its test for "use" is interpreted. The case involved a child who attempted to enter his parents' parked and locked truck through its rear to retrieve an article of clothing. Id. at 154. While doing so, he inadvertently caused a loaded shotgun in the truck's gun rack to fire, injuring a passenger in another vehicle. Id. The court concluded that the injury arose from the use of the truck as a matter of law. The child's sole purpose was to gain entry to the truck, his unorthodox method of entry was not an unexpected or unnatural use of the vehicle for a child, and it was his intent to enter the vehicle that directly caused the gun to discharge, thus causing the injury. Id. at 158. The court reasoned that, had the truck's movement caused the shotgun to discharge, there would be little question that the vehicle produced the injury; although a moving vehicle would have more of a role in the accident, it would not be significantly more. Id. at 158-59. Although it was a close

6

call, the truck "produced" the injury and was not merely the situs of activity, unrelated to the accident. Id. at 159.

Similarly, in Lyons v. State Farm Lloyds & Nat'l Cas. Co., 41 S.W.3d 201, 205 (Tex. App. 2001), the court held that a woman's injury in trying to enter the trailer of a parked car arose out of the "use" of the vehicle. Although the vehicle was not in motion, the injury occurred within the territorial limits of the vehicle, the vehicle produced rather than simply contributed to the injury, and the woman intended to use it as a vehicle. Id. at 205-06.[2]

Applying the Lindsey factors to the instant case, we must conclude that McCann's injuries arose from the use of ALC's van. First, her injuries occurred while the van was being used for one of its inherent purposes: transportation of children to ALC. Although the van was no longer in motion, its purpose — as to McCann — had not yet been fulfilled and was thus ongoing. Second, the accident occurred within the van's natural territorial limits

---

[2] Where a vehicle is a mere situs of injury, fungible with any other situs, it is not being "used." In LeLeaux, supra, the Texas Supreme Court ruled that an accident did not arise out of the use of a vehicle when a student was injured after returning to a parked, empty bus after competing in a band competition. The bus was not being used for its intended purpose—transporting students—but instead was the mere situs of the injury. School officials and the driver were not around, and "the manner in which school district employees loaded and unloaded students had nothing to do with [the student's] injury." Id. at 52.

7

before the actual use—the transportation of McCann to ALC—terminated.[3]

Third, the vehicle caused, rather than merely contributed to, the conditions that produced the injury. Le'Yazmine was injured because she was left in a hot, unventilated <u>vehicle</u> by the driver. The vehicle was not merely the situs of the injury, but a producing cause. Unfortunately, the danger of leaving children in locked vehicles during extreme weather conditions is well known; it is a danger inherent in the manner in which automobiles trap heat. The same dangers are not found in classrooms or parks. Thus, "but for" the use of the van to transport Le'Yazmine, she would not have been injured.

Finally, the <u>Lindsey</u> court noted the importance of intent: "Whether a person is using a vehicle as a vehicle depends not only on his conduct but on his intent." 997 S.W.2d at 156. In this case, the intent of all parties was to use the van to transport the child to ALC. Although the consequences of that use clearly were not intended, this does not negate the fact that the parties placed the young child in the van intending to use it for transportation.

---

[3] ALC argues that there were two separate purposes: one to transport McCann from her home to ALC, and another to shepherd McCann from ALC's parking lot into the daycare center. We decline to parse the various purposes so narrowly; the overarching purpose of the van was to take the children safely from their homes to the center. Although the van's purpose as to the other children was successfully fulfilled, the purpose as to <u>McCann</u> was ongoing at the time of the injury.

This conclusion is in accord with the holdings of other courts that have considered the issue. In <u>St. Paul Mercury Ins. Co. v. Chilton-Shelby Mental Health Ctr.</u>, 595 So.2d 1375 (Ala. 1992), the Supreme Court of Alabama held that an automobile exclusion in a general liability insurance policy precluded coverage where an infant suffered a heat-related death after being left unattended in a van. Although the negligence did not relate specifically to the driving of the van, "the fact remain[ed] that [the child] died in the van while it was being used by the Center to provide transportation services...." <u>Id.</u> at 1377.

Citing <u>St. Paul</u>, other courts have enforced auto exclusions in these circumstances. For example, in a similar case, a Maryland appeals court found that, under the plain meaning of the policy's terms, coverage was excluded. <u>Gallegos v. Allstate Ins. Co.</u>, 797 A.2d 795, 808-09 (Md. App. 2002). The result did not change just because the van was not moving at the time of the injury. <u>Id.</u> at 808. Most recently, a California court cited that State's expansive view of the term "use" and the disinclination to find overlapping coverage between the auto and general liability policies. <u>Prince v. United Nat'l Ins. Co.</u>, 47 Cal.Rptr.3d 727, 733 (Cal. App. 2006). The court accordingly held that the "relationship between the use of the automobile and the injury was sufficient to trigger the exclusion." <u>Id.</u> at 735. The court observed that the type of rapid onset hyperthermia that killed the children occurs almost exclusively in motor vehicles, making the

car an instrumentality, rather than mere situs, of the injury. Id.[4]

ALC points to one decision holding that CGL coverage <u>does</u> exist in a similar situation. <u>Mt. Vernon Fire Ins. Co. v. Heaven's Little Hands Day Care</u>, 795 N.E.2d 1034 (Ill. App. 2003). The court found that "leaving an infant in an automobile used to transport him...is not a normal or reasonable consequence of the use of the vehicle." <u>Id.</u> at 1043. The vehicle ceased being used as a method for transportation when the <u>other</u> occupants exited. <u>Id.</u> In sum, the negligence leading to the death was "nonvehicular conduct." <u>Id.</u>

<u>Mt. Vernon</u>'s reasoning is unpersuasive. First, although a vehicle may have ceased being a mode of transportation for its other occupants, the purpose of transportation had <u>not</u> been fulfilled as to the victim at the time of injury. Second, the negligence in not removing a child from the van or having in place a system to insure the removal of all the children <u>is</u> vehicular conduct; it relates directly to ALC's use of the van as a mode of transportation. Third, we are bound by the more expansive treatment of the term "use" in Texas law, <u>see</u> <u>Lindsey</u>, 997 S.W.2d 153; <u>Lyons</u>, 41 S.W.3d 201, which led to the conclusion that the

---

[4]    <u>See</u> <u>also</u> <u>Capital Indem. Corp. v. Braxton</u>, 24 F.App'x 434, 2001 WL 1580220 (6th Cir. Dec. 6, 2001) (unpublished). The insurance exclusion at issue was identical to the one here, <u>see</u> <u>id.</u> at 438, and the hyperthermia-induced death was similarly caused. The court found that the accident arose out of the use of the vehicle, as an unduly narrow interpretation would "defeat the evident purpose of the exclusion." <u>Id.</u> at 442.

10

failure to remove a child from a vehicle after using that vehicle to transport the child does arise out of the use of an automobile.

Finally, the inclusion of similar language in the auto and CGL policies indicates an intent by the companies involved to avoid overlapping coverage, whatever the scope of "use" may be. The district court found that American International was required to defend and indemnify ALC under the auto policy, a finding that ALC has not appealed. See Lincoln Gen. Ins. Co. v. Aisha's Learning Ctr., 2005 WL 954997, at *9 (N.D. Tex. Apr. 26, 2005). Consistency demands that the same terms in insurance policies, which were written with any eye to governing state case law, be interpreted similarly. Pursuant to Lindsey's factors, when an automobile is being used as a vehicle, and that use has not ended as to the victim, the injury does arise out of the use of the automobile.

### III.  Conclusion

Because the injury to Le'Yazmine McCann arose out of the use of the vehicle, the auto exclusion in ALC's CGL policy applies, and Lincoln General has no duty to defend or indemnify ALC in the underlying suit. The district court's grant of summary judgment to Lincoln General is AFFIRMED.

11