# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

State Farm Mutual Automobile Insurance Company,
Respondent,

v.

Beverly Goyeneche, David R. Gray, III and Amanda
Goyeneche (a/k/a Amanda Goyeneche-Gray),
individually and as Parent and Natural Guardian of S.G.,
Defendants,

Of Whom Beveryly Goyeneche, and Amanda Goyeneche
are the Appellants.

Appellate Case No. 2016-000840

———————

Appeal From Darlington County
Paul M. Burch, Circuit Court Judge

———————

Opinion No. 5697
Heard June 7, 2018 – Filed December 18, 2019

———————

**AFFIRMED**

———————

Karl Huggins Smith, of Smith Watts & Associates, LLC,
of Hartsville, for Appellants.

Jonathan M. Robinson, of DuBose Robinson Morgan,
PC, of Camden, for Respondent.

———————

**MCDONALD, J.:**  This is a declaratory judgment action to determine whether
State Farm Mutual Automobile Insurance Co. (State Farm) has a duty to defend

and provide liability and underinsured motorist (UIM) coverage following the death of an unattended child (S.G.) in a vehicle insured by a State Farm automobile policy. Appellants Beverly Goyeneche (Grandmother) and Amanda Goyeneche (Mother) appeal the circuit court's order finding their claims arising from S.G.'s death are excluded from coverage and State Farm has no duty to defend or indemnify Grandmother, Mother, or David R. Gray, III (Father).[1] Appellants argue the circuit court erred in (1) finding the State Farm policies issued to S.G.'s parents and grandmother provide no coverage for S.G.'s death; (2) rejecting persuasive authority from other jurisdictions; and (3) determining S.G. was a resident relative of only Mother's household. We affirm.

**Stipulated Facts[2]**

The underlying facts of this case are tragic. On the morning of May 8, 2014, Father placed thirteen-month-old S.G. into her car seat in the back seat of his truck, intending to take her to daycare. However, Father instead drove to work, leaving S.G. unattended in the back seat of the truck. Father's truck was parked, with the ignition off, from approximately 9:30 a.m. until 1:00 p.m., 1:15 p.m. until 2:15 p.m., and again from 2:30 p.m. until 5:15 p.m. At the end of his work day, Father found S.G. unresponsive in his vehicle; she was pronounced dead from complications of hyperthermia at 5:50 p.m.

Mother made claims under the liability and UIM coverage of the following insurance policies (the Policies) issued by State Farm:

> 1. Policy Number 4891-309-40: issued to Father on February 28, 2014, insuring a 2001 Ford F150 pickup truck, and providing liability and UIM coverage of $25,000 per person, $50,000 per occurrence, and $25,000 for property damage.
>
> 2. Policy Number C483241E: issued to Mother on October 30, 1998, insuring a 2013 Jeep Wrangler, and providing liability and UIM coverage of $50,000 per

---

[1] Father was a defendant in the underlying action but is not a party to this appeal.

[2] S.G.'s residence is disputed.

person, $100,000 per occurrence, and $25,000 for property damage.

3. Policy Number 1003667A:  issued to Grandmother on September 27, 2004, insuring a 2004 Chevrolet Impala, and providing liability and UIM coverage of $50,000 per person, $100,000 per occurrence, and $25,000 for property damage.

4. Policy Number 1772085A:  issued to Grandmother on June 3, 2008, insuring a 2007 Chevrolet C1500, and providing liability and UIM coverage of $50,000 per person, $100,000 per occurrence, and $25,000 for property damage.

The Policies provided coverage for "bodily injuries and property damage caused by an accident and arising out of the ownership, maintenance or use of the insured automobile, and otherwise subject to the terms of the policy."

**Procedural History**

On September 24, 2014, State Farm brought this declaratory judgment action seeking a declaration that the Policies did not provide coverage for S.G.'s death, and, therefore, State Farm owed no duty to defend or indemnify Grandmother, Mother, or Father.  Appellants filed a joint answer and counterclaim, asserting S.G.'s death arose from the operation, ownership, maintenance or use of vehicles covered by the Policies.  Appellants also sought a declaration that the Policies provide coverage for S.G.'s death.

The parties entered a stipulation of facts, and Appellants gave deposition testimony.  The circuit court held a nonjury trial on April 7, 2015; State Farm's South Carolina Policy Form 9840a and the deposition testimonies were offered into evidence without objection.  By order dated June 1, 2015, the circuit court declared that the Policies did not provide coverage in this matter.  Specifically, the circuit court concluded there was no evidence Father's truck was an "active accessory" in S.G.'s death.  The court further determined that even if a causal connection existed between the truck and the injury, Father's neglect was an act of independent significance severing the causal connection.  The court also found the

third prong of the *Aytes* test, the "transportation" element, was not satisfied.[3] Finally, the circuit court determined S.G. was a resident solely of Mother's home. Defendants' filed a Rule 59(e), SCRCP, motion to alter or amend; following a hearing, the circuit court denied this motion.

**Standard of Review**

"Declaratory judgment actions are neither legal nor equitable and, therefore, the standard of review depends on the nature of the underlying issues." *Judy v. Martin*, 381 S.C. 455, 458, 674 S.E.2d 151, 153 (2009). "When the purpose of the underlying dispute is to determine whether coverage exists under an insurance policy, the action is one at law." *Crossmann Cmtys. of N.C., Inc. v. Harleysville Mut. Ins. Co.*, 395 S.C. 40, 46, 717 S.E.2d 589, 592 (2011). "In an action at law tried without a jury, the appellate court will not disturb the trial court's findings of fact unless there is no evidence to reasonably support them." *Id.* at 46–47, 717 S.E.2d at 592 (quoting *Auto Owners Ins. Co. v. Newman*, 385 S.C. 187, 191, 684 S.E.2d 541, 543 (2009)). "When an appeal involves stipulated or undisputed facts, an appellate court is free to review whether the trial court properly applied the law to those facts." *In re Estate of Boynton*, 355 S.C. 299, 301, 584 S.E.2d 154, 155 (Ct. App. 2003) (quoting *WDW Props. v. City of Sumter*, 342 S.C. 6, 10, 535 S.E.2d 631, 632 (2000)). "In such cases, the appellate court owes no particular deference to the trial court's legal conclusions." *Id.* at 301–02, 584 S.E.2d at 155 (quoting *J.K. Constr., Inc. v. W. Carolina Reg'l Sewer Auth.*, 336 S.C. 162, 166, 519 S.E.2d 561, 563 (1999)).

**Law and Analysis**

**I. The *Aytes* Test**

Appellants assert the circuit court erred in applying the three-pronged test of *State Farm Fire & Casualty Co. v. Aytes* in determining the Policies provide no coverage. We disagree.

In *Aytes*, the insured, Donna Dawson, and Randy Aytes became involved in an altercation while at the home of Aytes's mother. *Id.* at 32, 503 S.E.2d at 745. Aytes took Dawson's keys and forced her into her car. *Id.* Although Aytes was

---

[3] *State Farm Fire & Casualty Co. v. Aytes*, 332 S.C. 30, 503 S.E.2d 744 (1998) (discussing the factors analyzed when determining whether damages arose from the "ownership, maintenance, or use" of an insured vehicle).

forbidden to drive Dawson's car, he drove Dawson to his mother's property with the expressed intent of killing her. *Id.* While standing outside the car on the passenger side, Aytes fired a pistol towards Dawson, striking her in the foot. *Id.*

In response to certified questions from the United States district court, our supreme court restated South Carolina's three-prong test for determining whether "[a]n insured is legally entitled to recover damages arising out of the 'ownership, maintenance, or use' of an uninsured vehicle." *Id.* at 33, 503 S.E.2d at 745; *see also* S.C. Code § 38-77-140(A) ("An automobile insurance policy may not be issued or delivered in this State . . . unless it contains a provision insuring the persons defined as insured against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of these motor vehicles . . . ."). "First, the party seeking coverage must establish a causal connection between the vehicle and the injury. Second, there must exist no act of independent significance breaking the causal link. . . . [Third,] it must be shown the vehicle was being used for transportation at the time of the assault." *Id.*

In applying this test to the facts presented, the supreme court concluded:

> There was not a causal connection in this case as the vehicle was not an active accessory, nor was it being used for transportation at the time of the injury. Further, if there was a causal link, it was broken when the assailant exited the vehicle. The only connection between the car and the injury is the fact that Dawson was sitting in the car when she was shot. Therefore, we do not find Dawson's injuries resulted from the ownership, maintenance, or use of her vehicle.

*Id.* at 35, 503 S.E.2d at 746.

This court considered the first two requirements that later became part of the *Aytes* test in *Hite v. Hartford Accident and Indemnity Co.*, 288 S.C. 616, 344 S.E.2d 173 (Ct. App. 1986). Hite was employed by a car dealership, which provided an automobile for his use. *Id.* at 617, 344 S.E.2d at 174. On the evening of his injury, Hite returned to the dealership and, leaving the car running, exited the vehicle. While approaching the dealership on foot, Hite heard the night watchman yell that someone (William Martin) had backed into a new truck. *Id.* at 618, 344 S.E.2d at 175. Hite walked fifty feet across the parking lot to tell Martin, who was sitting in a car, not to leave. *Id.* However, Martin accelerated the vehicle and ran over

Hite's legs. *Id.* In holding there was no causal connection between the insured vehicle Hite had been driving and Hite's injuries, this court concluded, "[i]t is difficult to see where use of the insured automobile was directly connected with or a cause of the ensuing accident." *Id.* at 621–22, 344 S.E.2d at 177.

Before *Aytes*, our supreme court considered the availability of automobile insurance coverage for a passenger's gunshot injuries in *Wausau Underwriters Ins. Co. v. Howser*, 309 S.C. 269, 422 S.E.2d 106 (1992). There, a passenger in a Chevrolet Blazer was injured when an unknown assailant in another vehicle bumped, pursued, and then shot at the Blazer. *Id.* at 271, 422 S.E.2d at 107. Relying on *Continental Western Insurance Co. v. Klug*, 415 N.W.2d 876 (Minn. 1987), the supreme court explained:

> In *Klug*, the court first considered the causal connection between the vehicle and the injury. The causation required is something less than proximate cause and something more than the vehicle being the mere site of the injury. We employed a similar analysis in *Chapman v. Allstate Insurance Co.*, 263 S.C. 565, 211 S.E.2d 876 (1975), wherein an uninsured motorist assaulted the insured while traveling in the uninsured's vehicle. The insured was injured when she fell or jumped from the moving vehicle as a result of the attack. Accordingly, we held it was clear the injury arose out of the use of the uninsured automobile. Although the assault, not the use of the vehicle, was the cause of the insured's injuries, we found that the use of the vehicle causally contributed to the claimant's injuries.

*Howser*, 309 S.C. at 272–73, 422 S.E.2d at 108 (citations omitted). In determining the necessary causal connection for coverage that existed between the uninsured vehicle and the injuries Howser sustained, the court stated, "[t]he gunshot was the culmination of an ongoing assault, in which the vehicle played an essential and integral part. Additionally, only a motor vehicle could have provided the assailant a quick and successful escape." *Id.* at 273, 422 S.E.2d at 108.

Again relying on *Klug*, the *Howser* court further explained, "[o]nce causation is established, the court must determine if an act of independent significance occurred breaking the causal link." *Id.* The court noted consideration of the existence of such an independent act is consistent with South Carolina precedent:

In *Plaxco v. United States Fidelity and Guaranty Co.*, 252 S.C. 437, 166 S.E.2d 799 (1969), the vehicle's battery was used to start the engine of an airplane. Once this was accomplished, the airplane's brakes failed, causing it to move forward and damage another plane. This Court found the only connection between the vehicle and the plane was the use of the vehicle to start the plane. Since that purpose had been completed when the plane moved forward, any causal connection was broken and the accident resulted from the use of the plane and not the vehicle.

In this case, no independent act occurred to break the causal link. Here, as in *Klug*, the unknown driver's use of his vehicle and the shooting were inextricably linked as one continuing assault. Accordingly, we conclude that for the purposes of Howser's uninsured motorist coverage, her injuries arose out of the use of her assailant's vehicle.

*Howser*, 309 S.C. at 273–74, 422 S.E.2d at 108–09 (citations omitted).

The supreme court added an additional factor to the coverage test in *Canal Insurance Co. v. Insurance Co. of North America*, 315 S.C. 1, 431 S.E.2d 577 (1993). There, the owner and operator of a truck crane was using the crane to lift a condenser onto a roof when the crane became unbalanced, tipped over, and crashed into the building. *Id.* at 2–3, 431 S.E.2d at 578–79. In construing section 38-77-140, the court defined "'use of a motor vehicle' as limited to transportation uses." *Id.* at 4, 431 S.E.2d at 579. Thus, because the truck crane was not being used for transportation at the time of the accident, the supreme court reversed the circuit court's judgment finding coverage available under the subject policy. *Id.* at 4, 431 S.E.2d 577, 579–80; *see also Peagler v. USAA Ins. Co.*, 368 S.C. 153, 165, 628 S.E.2d 475, 481 (2006) (finding no coverage for decedent's fatal injury due to accidental discharge of a shotgun which occurred during the unloading of firearms from a stationary, occupied vehicle that had been used for hunting purposes the previous day).

Our appellate courts have subsequently addressed the "ownership, maintenance, or use" of a vehicle numerous times in the context of assaults involving intentional

conduct by an assailant. *See e.g.*, *State Farm Mut. Auto. Ins. Co. v. Bookert*, 337 S.C. 291, 293, 523 S.E.2d 181, 182 (1999) (holding injuries arising from gunshots fired from a truck in a restaurant parking lot were excluded from coverage because such injuries are not "foreseeably identifiable with the normal use of an automobile" (quoting *Aytes*, 332 S.C. at 33, 503 S.E.2d at 746)); *Doe v. S.C. State Budget and Control Bd.*, 337 S.C. 294, 297, 523 S.E.2d 457, 45 (1999) (concluding injuries suffered by sexual assault victims were not covered by police department's automobile and general liability policies because the injuries did not arise out of "use" of officer's patrol car within meaning of auto policy); *Home Ins. Co. v. Towe*, 314 S.C. 105, 107–08, 441 S.E.2d 825, 827 (1994) (holding necessary causal connection existed between use of insured's vehicle and serious injuries sustained by tractor trailer driver struck by bottle thrown from passing vehicle; the causal connection was not broken by the insured's passenger's intentionally throwing bottle at a road sign). But our supreme court has clarified that "[n]o distinction is made as to whether [an] injury resulted from a negligent, reckless, or intentional act." *Towe*, 314 S.C. at 107, 441 S.E.2d at 827.

### A. Causal Connection

Appellants challenge the circuit court's application of the *Aytes* coverage factors to the facts here, arguing the court erroneously found there was no causal connection between the "ownership, maintenance or use" of Father's truck and S.G.'s death. Regarding the initial "causal connection" prong of the coverage inquiry, our supreme court has found a party must demonstrate: "(a) the vehicle was an 'active accessory' to the assault; and (b) something less than proximate cause but more than mere site of the injury; and (c) that the 'injury must be foreseeably identifiable with the normal use of the automobile.'" *Bookert*, 337 S.C. at 293, 523 S.E.2d at 182 (quoting *Aytes*, 332 S.C. at 33, 503 S.E.2d at 745–46). "The required causal connection does not exist when the only connection between an injury and the insured vehicle's use is the fact that the injured person was an occupant of the vehicle when the [injury] occurred." *Aytes*, 332 S.C. at 33, 503 S.E.2d at 746.

We agree with Appellants that Father's truck was an active accessory to S.G.'s death. At trial, State Farm argued S.G.'s hyperthermia was "caused by the atmospheric conditions around us when we were in Hartsville [in] May 2014. The heat is what caused the hyperthermia to eventually—if this happened in February, we'd likely have a different story." However, Appellants contend it is well known that vehicles trap heat and the vehicle itself was the producing cause of the onset of S.G.'s hyperthermia. At trial, Appellants stated they did not know whether S.G. would have died if she had been left outside the vehicle: "[She] may have had a

sunstroke. [She] may have had heat exhaustion. [She] may have died of dehydration but in this particular case[, she] died from being inside a vehicle."

In their brief to this court, Appellants assert, "Hyperthermia would not have happened just anywhere—the nature of the injury is inextricably linked to the fact that Infant was in Father's vehicle, which he then drove and parked, leaving her inside, prior to completing his transport of her to daycare." And at oral argument, Appellants explained Father's truck was not merely the site of the injury, it caused the injury; the very nature of the vehicle produced the excessive heat that concentrated inside, causing S.G.'s fatal injury. *See e.g.*, *Towe*, 314 S.C. at 107, 441 S.E.2d at 827 (determining automobile was an active accessory that gave rise to the injuries because insured's use of the automobile placed his passenger in the position to throw a bottle at a road sign and the vehicle's speed contributed to the velocity of the bottle, which increased the seriousness of victim's injuries); *Howser*, 309 S.C. at 273, 422 S.E.2d at 108 (finding a sufficient causal connection existed between use of assailant's vehicle and insured's injuries because the use of the vehicle allowed the assailant to closely pursue Howser; the gunshot was the culmination of an ongoing assault in which the vehicle played "an essential and integral part;" and only an automobile could have provided the assailant with the means to escape).

It is undisputed that Father placed S.G. in his truck to transport her to daycare and that she was ultimately harmed because Father forgot she was in her car seat and left her in the vehicle for over seven hours. Because the physical makeup of automobiles and trucks causes them to trap heat—and the excessive temperature caused S.G.'s death—we find Father's truck not only contributed to but played "an essential and integral part" in her death. *Contra Aytes*, 332 S.C. at 33, 503 S.E.2d at 746 ("The required causal connection does not exist when the only connection between an injury and the insured vehicle's use is the fact that the injured person was an occupant of the vehicle when the shooting occurred.").

Additionally, the fatal injury was foreseeably identifiable with the normal use of a vehicle. *See Aytes*, 332 S.C. at 33, 503 S.E.2d at 745–46 ("The injury must be foreseeably identifiable with the normal use of the vehicle."). Many vehicles in South Carolina are used to transport children; transporting children to and from daycare is neither an abnormal nor an unanticipated use. Significantly, our Legislature has recognized that the intentional or unintentional act of leaving a child inside a locked vehicle is foreseeably identifiable with the normal use a vehicle. *See* S.C. Code Ann § 15-3-700 (2016) ("A person is immune from civil liability for property damage resulting from his forcible entry into a motor vehicle

for the purpose of removing a minor or vulnerable adult from the vehicle if the person has a reasonable good faith belief that forcible entry into the vehicle is necessary because the minor or vulnerable adult is in imminent danger of suffering harm."). Accordingly, we find Appellants established the necessary causal connection between Father's truck and S.G.'s death.

## B. Act of Independent Significance

However, we disagree with Appellants' contention that the circuit court erred in finding Father's leaving the child unattended in the truck for over seven hours was an act of independent significance that broke any causal connection between Father's truck and S.G.'s death.

While our appellate courts have not addressed the factual scenario presented here, South Carolina courts have previously found an assailant's exiting an insured vehicle prior to injuring another to be an act of independent significance breaking the causal chain. *See e.g.*, *Aytes*, 332 S.C. at 35, 503 S.E.2d at 746 ("[I]f there was a causal link, it was broken when the assailant exited the vehicle."); *Carraway v. Smith by S.C. Ins. Co.*, 321 S.C. 23, 26, 467 S.E.2d 120, 121 (Ct. App. 1995) ("Smith exited the car and carried on a conversation with a third person for several minutes before the shooting occurred. Even if the use of the car and the shooting were connected, that link was broken by Smith's actions."). We agree with the circuit court that Father's act of abandoning S.G. for over seven hours, however unintentional, was an act of independent significance breaking the causal connective link between Father's truck and S.G.'s death.

## C. Transportation

Appellants next contend the circuit court erroneously found that even if no act of independent significance existed to break the causal chain, the Policies provide no coverage because the truck was not being used for transportation at the time of S.G.'s death. We find no error.

The parties stipulated that Father turned off his ignition, left the truck unattended in the parking lot at his place of employment, and did not occupy the truck for approximately seven hours. The truck never left the parking space, and only S.G. occupied the vehicle. Thus, we agree with the circuit court's finding that Father's truck was not being used for transportation at the time of S.G.'s fatal injury.

## II. Authority from Other Jurisdictions

When there is no South Carolina case directly on point, our courts may look to persuasive authority from other jurisdictions. *Williams v. Morris*, 320 S.C. 196, 200, 464 S.E.2d 97, 99 (1995). However, in considering such cases, we may not apply them in such a manner that we overrule supreme court precedent. *See* S.C. Const. art. V, § 9 ("The decisions of the Supreme Court shall bind the Court of Appeals as precedents.").

Appellants rely heavily on *Lincoln General Insurance Co. v. Aisha's Learning Center*, 468 F.3d 857 (5th Cir. 2006) to support their argument that the circuit court erred in finding the Policies provide no coverage here. There, the Fifth Circuit applied Texas law, reasoning that because a vehicle was being used to transport children to a destination—even though the vehicle had been parked for seven hours and was no longer in motion—the vehicle's intended purpose had not yet been fulfilled and was thus ongoing. *Id.* at 860. The Fifth Circuit acknowledged "Texas courts define 'use' broadly: "the phrase 'arising from use' is treated as being a 'general catchall . . . designed and construed to include all *proper* uses of the vehicle not falling within other terms of definition.'" *Id.* at 859 (quoting *Tucker v. Allstate Tex. Lloyds Ins. Co.*, 180 S.W.3d 880, 886 (Tex. App. 2005). The Fifth Circuit's analysis includes not only a broader meaning of the term "use" than our supreme court has set forth, but also a fundamentally different consideration of "transportation" in the context automobile insurance coverage.

As noted above, South Carolina courts have held the party seeking coverage must show the vehicle was being used for transportation at the time of injury. *See Canal*, 315 at 4, 431 S.E.2d at 479 (construing section 38-77-140 and defining "'use of a motor vehicle' as limited to transportation uses"). The law on which the Fifth Circuit relied, however, has no such transportation requirement. The Fifth Circuit applied Texas's test, which considers a person's "intended" use of a vehicle. *See Lincoln General*, 486 F.3d at 861 ("Whether a person is using a vehicle as a vehicle depends not only on his conduct but on his intent." (quoting *Mid-Century Ins. Co. v. Lindsey*, 997 S.W.2d 153, 156 (Tex. 1999)). South Carolina courts have not adopted a party's intended use of a vehicle in relation to the *Aytes* test; thus, we believe the Fifth Circuit's expanded definitions of the terms "use" and "transportation" are inconsistent with existing South Carolina law. *See Aytes*, 332 S.C. at 33, 503 S.E.2d at 745 (recognizing "it must be shown the vehicle was being used for transportation at the time of the assault.").

The California state court case cited by Appellants offers another illustration of a broader standard of coverage that does not include the transportation prong required in South Carolina. In *Prince v. United National Insurance Co.*, the

California Court of Appeals noted "[p]ast California cases have established beyond contention that this language of 'arising out of the use,' when utilized in a coverage or insuring clause of an insurance policy, has a broad and comprehensive application, and affords coverage for injuries bearing almost any causal relation with the vehicle."  47 Cal. Rptr. 3d 727, 730 (Cal. App. 2006) (quoting *State Farm Mut. Auto Ins. Co. v. Partridge*, 514 P.2d 123, 127 (Cal. 1973)).  Because these jurisdictions apply a broader definition of "use" than that recognized in existing South Carolina precedent and do not require a similar "transportation" analysis, we find the circuit court appropriately declined to follow these authorities.

## III.    Residency

Appellants argue the circuit court erred in finding S.G. was a resident relative of only Mother's household.  Appellants further argue the circuit court erred in declaring the residency issue unpreserved for appellate review.

In *Elam v. South Carolina Department of Transportation*, our supreme court explained:

> [O]ur rules contemplate two basic situations in which a party should consider filing a Rule 59(e) motion.  A party may wish to file such a motion when she believes the court has misunderstood, failed to fully consider, or perhaps failed to rule on an argument or issue, and the party wishes for the court to reconsider or rule on it.  A party must file such a motion when an issue or argument has been raised, but not ruled on, in order to preserve it for appellate review.

361 S.C. 9, 24, 602 S.E.2d 772, 780 (2004).  "If a party is unsure whether he properly raised all issues and obtained a ruling, he must file a Rule 59(e) motion or an appellate court may later determine the issue or argument is not preserved for review."  *Id.* at 25, 602 S.E.2d at 780.

In their Rule 59(e) motion to alter or amend, Appellants listed the following grounds:

> 1. The Court's Order denies the Defendants' grounds for insurance coverage under the existing vehicular policies of the Plaintiff.  The Court further found that the death of

[Infant] did not arise out of the ownership, maintenance or use of the vehicle.

2. The Court based the ruling on *State Farm Fire and Casualty Company v. Aytes*, 322 S. C. 30, 503 S.E. 2d 744 (1998), which sets forth a three (3) pronged test for determining coverage. The Order ignored the case law presented by the Defendants to support their argument or the Order failed to fully explain why said cases and arguments are different from the facts set forth in the present case.

3. The stipulated facts further failed to set forth the details of the "use" of the vehicle by the Defendant driver during the lunch hour while the infant was still present in the vehicle and ignored the fact that the infant's transportation to the daycare facility had never ceased. The Defendants request the Court reopen its judgment, take additional testimony or evidence, amend its findings of fact and conclusion of law or make new findings and conclusions and direct entry of a new judgment.

In its order denying Appellants' motion to alter or amend, the circuit court reaffirmed its prior ruling and noted Appellants failed to raise the resident relative issue in their motion to reconsider. However, Appellants' motion stated, "The Court's Order denies the Defendants' grounds for insurance coverage under the existing vehicular policies of the Plaintiff." Arguably, this statement placed the circuit court on notice that Appellants were seeking a review of *all* of the court's rulings—including its ruling on the question of S.G.'s residency. Furthermore, because Appellants made a permissive motion for reconsideration and not a mandatory motion necessary to preserve an unaddressed error, we find the residency issue is preserved for our review.

Our supreme court first analyzed whether a person was a resident relative of the same household as a named insured in *Buddin v. Nationwide Mutual Insurance Co.*, 250 S.C. 332, 157 S.E.2d 633 (1967). The court stated "'a resident of the same household is one, other than a temporary or transient visitor, who lives together with others in the same house for a period of some duration, although he may not intend to remain there permanently.'" *Id.* at 339, 157 S.E.2d at 636 (quoting *Hardware Mut. Cas. Co. v. Home Indem. Co.*, 50 Cal.Rptr. 508, 514 (Cal.

App. 1966)).  The supreme court noted several factors for possible consideration—rent or boarding payments; the presence or absence of control over the relative; and whether there was a lack of a permanent living arrangement—but found none were determinative of the issue.  *Id.* at 338–39, 157 S.E.2d at 636.

In *Auto-Owners Insurance Company v. Horne*, 356 S.C. 52, 66, 586 S.E.2d 865, 873 (Ct. App. 2003), this court concluded "there is no single test to determine whether a minor child is a resident of a noncustodial parent's household for purposes of determining UIM benefits.  Rather, the courts generally look at the facts and circumstances of each case in totality to determine the child's residency." While the *Horne* court found the seventeen-year-old child was not a resident relative of her non-custodial father's household, the question of whether a person may be a resident relative of more than one household has not yet been addressed. *See Smith v. Auto-Owners Ins. Co.*, 377 S.C. 512, 516, 660 S.E.2d 271, 273 (Ct. App. 2008) ("No statute provides guidance concerning whether an insured may maintain more than one household simultaneously.  Although the courts have contemplated the meaning of 'resident relative' on numerous occasions, the issue of whether an insured may reside in multiple households simultaneously is one of first impression." (footnote omitted)).

Here, Father admitted Mother was S.G.'s primary custodian because she lived with Mother.  Father explained that while he was allowed very liberal visitation with S.G., the parties had no set visitation schedule.  Father testified S.G.'s first overnight visit with him occurred in January 2014, and Mother sent an overnight bag whenever S.G. stayed with him.  Father also acknowledged he has never claimed S.G. as a dependent on his taxes.

At the time of S.G.'s death, Mother lived with her parents, whose home was listed as the principal address for documentation relating to S.G.  Mother testified she and Father never shared a residence and S.G. stayed exclusively with her during her six-week maternity leave.  She explained that beginning in December 2013, S.G. began staying with Father on a regular basis.  According to Mother, she and Father had a "four-three schedule" meaning S.G. "would stay four days with one parent, three days with the [other parent,] and then we would often alternate and change the schedule if something came up."  Mother admitted Father kept a Pack N' Play (portable crib) while she had a permanent wooden crib at her home. Mother concluded her deposition testimony by stating, "I believe we had shared custody but I would say I would be primary."

Grandmother testified Mother was living at her home on April 8, 2013, the day S.G. was born.  She characterized S.G.'s home in May 2014 as Mother's house and Father's house.  Grandmother explained that in the last three or four months of her life, S.G. stayed "so many nights at [Father's] house and so many nights at our house with [Mother]."  Cognizant of our standard of review, we find evidence exists to reasonably support the circuit court's decision that S.G. was a "resident relative" of only Mother's household.  *See Crossmann Cmtys. of N.C., Inc.*, 395 S.C. at 46–47, 717 S.E.2d at 592 ("In an action at law tried without a jury, the appellate court will not disturb the trial court's findings of fact unless there is no evidence to reasonably support them."  (quoting *Newman*, 385 S.C. at 191, 684 S.E.2d at 543)).

**Conclusion**

We find Father's act of leaving S.G. in his truck for over seven hours was an act of independent significance breaking any causal link between the use of the truck and her tragic death.  Moreover, Appellants are unable to establish the vehicle was being used for transportation during the time S.G. was left in the truck.  Finally, evidence supports the circuit court's finding that S.G. was a resident relative of only Mother's household.  Thus, the judgment of the circuit court is

**AFFIRMED.**

**HUFF and GEATHERS, JJ., concur.**