TRI–STATE PIPE AND EQUIPMENT, INC., Tri–state Exploration and Production, Inc., Tri–state Well Services, Inc., James Tellgren and James Stuart, Appellants,

v.

SOUTHERN COUNTY MUTUAL INSURANCE COMPANY, Appellee.

No. 06–98–00144–CV.

Court of Appeals of Texas, Texarkana.

Submitted Oct. 21, 1999.

Decided Dec. 2, 1999.

James B. Lewis, Glover, Anderson, Lewis & Prebeg, Houston, D.J. Powers, Austin, Dean Searle, Marshall, for appellant.

Alexander N. Beard, Michael Hummert, Bishop & Hummert PC, Dallas, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## O P I N I O N

Opinion by Chief Justice CORNELIUS.

Tri–State Pipe & Equipment, Inc. and other aligned parties appeal from a summary judgment granted in favor of Southern County Mutual Insurance Company. Tri–State contends (1) the trial court erred in ruling that Southern County had no obligation to provide Tri–State with the $500,000 of liability insurance coverage required by law; (2) the trial court erred in rendering judgment permanently enjoining Tri–State from bringing suit against Southern County directly or indirectly; and (3) Southern County's attempted interpleader was insufficient. We overrule contentions one and three and sustain contention two.

In December 1993, Tri–State Pipe & Equipment, Inc. ("Tri–State") purchased from Southern County Mutual Insurance

Company ("Southern County") a commercial vehicle liability insurance policy. Tri-State requested combined bodily injury and property damage liability coverage in the amount of $100,000 for any one accident, which at that time was the maximum amount of coverage the law required Tri-State to carry. Southern County issued Tri-State a policy for the requested coverage effective from December 17, 1994 through December 17, 1995.

On May 15, 1995, a tractor-trailer owned by Tri-State was involved in an accident with a vehicle owned and operated by Gala Rice and occupied by Kourtney Martin and Kara Garrett. Thereafter, Kimberly Rice, individually and as next friend of Kara Garrett, and Gala Rice and Kourtney Martin, individually, filed suit against Tri-State and James Tellgren, the driver of the truck, seeking damages for personal injuries resulting from the accident.

In response to the suit, Southern County filed a petition for declaratory judgment requesting that the trial court declare the amount of coverage available under the policy it had issued to Tri-State. Southern County also filed a motion for partial summary judgment declaring the applicable limit of insurance available under the policy to be $100,000, combined single limits coverage. Tri-State responded to Southern County's motion, contending that Texas statutes that became effective on January 2, 1995, required that Tri-State carry liability insurance in the amount of $500,000, and that Southern County was obligated by law to afford Tri-State the required amount of coverage. Tri-State based its contentions on the legal proposition that an insurer may not provide an insured with less coverage than the law requires the insured to carry. By order signed April 23, 1997, the trial court granted Southern County's motion for partial summary judgment and rendered summary judgment declaring that Southern County's policy provided coverage of only $100,000 as originally requested by Tri-State. Kimberly Rice, individually and as next friend of Kara Garrett, Gala Rice, and Kourtney Martin, individually, as intervenors, responded by filing a motion for reconsideration and rehearing, which the trial court granted.

In May 1997, the underlying suit proceeded to trial, and on June 3, 1997, the jury returned a verdict in favor of the plaintiffs, awarding them a total of $2,252,200. Before the judgment in the underlying suit was rendered, on June 10, 1997, Southern County deposited $95,000 into the registry of the court, being the policy limits of $100,000 less $5,000, the amount it had previously paid to settle Gala Rice's property damage claim.

On June 6, 1997, Southern County amended its original petition for declaratory judgment to include an interpleader and request for injunctive relief, and on April 24, 1998, Southern County filed a motion for summary judgment. By order signed August 19, 1998, the trial court once again held that the policy provided only $100,000 in coverage and that Southern County was entitled to summary judgment. In addition, the trial court granted Southern County's petition for an injunction prohibiting Tri-State from pursuing any further legal action against Southern County arising out of, or in connection with, the policy or the underlying suit.

A defendant who moves for summary judgment must show by uncontroverted summary judgment evidence that no material issue of fact exists as to at least one essential element of the plaintiff's cause of action, and that the defendant is entitled to judgment as a matter of law. *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 166–67 (Tex.1987). The defendant may establish this by producing summary judgment evidence showing that at least one element of the plaintiff's cause of action has been conclusively established against it. *Sakowitz, Inc. v. Steck*, 669 S.W.2d 105, 106–07 (Tex.1984); *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). The trial court did not state the grounds on which it granted Southern

County's motion. When a summary judgment order does not state the specific grounds on which it is granted, a party appealing from the judgment must show that each of the independent theories alleged in the motion for summary judgment is insufficient to support the order. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989). When reviewing a summary judgment granted on general grounds, we consider whether any theory set forth in the motion supports the summary judgment. *See Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex.1995). If any of the theories advanced by the movant demonstrates a right to judgment as a matter of law, the court's summary judgment will be affirmed. *Carr v. Brasher*, 776 S.W.2d at 569.

First, we consider Tri–State's contention that, pursuant to the Uniform Act Regulating Traffic on Highways, TEX.REV.CIV. STAT. ANN. art. 6701d, § 139(c),[1] and 16 TEX. ADMIN. CODE §§ 5.21 and 5.24(c), Southern County was obligated to provide Tri–State with a minimum of $500,000 combined single limits motor vehicle insurance, even though Tri–State purchased only $100,000 of coverage.

On December 17, 1994, the date Southern County's policy issued to Tri–State became effective, and on May 15, 1995, the date of the accident, the Uniform Act Regulating Traffic on Highways provided: "Every motor carrier subject to this section shall maintain liability and property damage insurance covering each motor vehicle operated by the motor carrier.... The [Texas Railroad Commission] shall set the amount of necessary insurance...." TEX.REV.CIV. STAT. ANN. art. 6701d, § 139(c). The Act defined a "motor carrier" as "any common carrier, specialized carrier, or contract carrier of property or passengers by motor vehicle or any private carrier of property by motor vehicle." TEX.REV.CIV. STAT. ANN. art. 6701d, § 2(*o*).[2]

The Texas Railroad Commission interpreted Article 6701d, § 139(c) as authorizing it to require certain limits of insurance coverage for commercial carriers and to impose sanctions for failure to maintain the required coverage. *See* 19 Tex. Reg. 10092, 10095 (Dec. 20, 1994) (adopting 16 TEX. ADMIN. CODE §§ 5.21–5.32). Thus, on December 20, 1994, pursuant in part to Article 6701d, § 139(c), the Commission adopted Title 16, Sections 5.21–5.32 of the Texas Administrative Code to "create a system of registration for commercial motor vehicles, and insurance and safety requirements, to be effective January 2, 1995." *See id.* at 10092. In Section 5.21, the Commission defined a commercial carrier as "any person that operates or causes the operation of a commercial motor vehicle upon the public highways of the State of Texas." 16 TEX. ADMIN. CODE § 5.21. In the same section, it defined a commercial motor vehicle as "[a]ny motor vehicle with a gross weight rating of 26,001 pounds or more, designed or used for the transportation of property." *Id.* In Section 5.24(c), the Commission set the amount of insurance required for commercial carriers:

> The minimum limits of financial responsibility for commercial carriers are hereby prescribed as follows: combined single limit for bodily injuries to or death of all persons injured or killed in any accident, and loss or damage in any one accident to the property of others (excluding cargo)—$500,000.

16 TEX. ADMIN. CODE § 5.24(c).

After it had issued the policy to Tri–State, Southern County received a bulletin issued by the Commission notifying it of

---

**1.** Act of May 19, 1987, 70th Leg., R.S., ch. 377, § 2, 1987 Tex. Gen. Laws 1878–79, *repealed by* Act of May 24, 1995, 74th Leg., R.S., ch. 705, § 31(a)(13), 1995 Tex. Gen. Laws 3740 [recodified in TEX. TRANSP. CODE ANN. § 549.201 (Vernon 1999), effective September 1, 1995].

**2.** Act of May 5, 1989, 71st Leg., R.S., ch. 151, § 1, 1989 Tex. Gen. Laws 529, *repealed by* Act of May 24, 1995, 74th Leg., R.S., ch. 705, § 31(a)(12), 1995 Tex. Gen. Laws 3740.

the requirement that, effective January 2, 1995, commercial motor vehicles operating in Texas must have the minimum insurance coverage of $500,000. The bulletin also set out the definition of a commercial motor vehicle. According to Tri–State, shortly after receiving the bulletin, Southern County added the Tri–State truck involved in the accident to the December 17 policy so that the truck was covered by the policy, but Southern County did not raise the monetary limits of the policy. Tri–State contends that because the truck was a commercial motor vehicle according to 16 Tex. Admin. Code §§ 5.21 and 5.24 and Tex.Rev.Civ. Stat. Ann. art. 6701d, § 139(c), it was required to carry $500,000 in liability coverage. Furthermore, it contends that the holding in the case of National County Mut. Ins. Co. v. Johnson, 879 S.W.2d 1 (Tex.1993), prohibited Southern County from providing less coverage than the law required Tri–State to carry. It contends that, under Johnson, Southern County's failure to provide, ex parte, the statutorily mandated amount of coverage was a violation of the statutes and therefore ineffective, so the trial court should have deemed that the policy provided the statutorily mandated coverage of $500,000 rather than the stated coverage amount of $100,000.[3]

The parties disputed whether Tri–State was required to obtain $500,000 in insurance coverage.[4] If Southern County had no obligation to provide the statutorily mandated coverage despite Tri–State's failure to request it, the question whether Tri–State was required to have the coverage is immaterial. Therefore, we will first decide the narrow issue whether the Com-mission's directive regarding mandatory coverage for commercial motor vehicles immediately voided the insurance policy as originally written and obligated Southern County to provide the $500,000 in insurance coverage the Commission required as of January 2, 1995. We will address the issue whether Tri–State was required to carry the $500,000 coverage only if we conclude that Southern County was obligated to provide the coverage.

Tri–State relies on National County Mut. Fire Ins. Co. v. Johnson, 879 S.W.2d 1, for the proposition that Southern County was obligated to provide the $500,000 limit of coverage even though Tri–State did not purchase it. In Johnson, the Supreme Court addressed the issue of whether a family member exclusion in an insurance policy was consistent with the public policy underlying the Texas Motor Vehicle Safety–Responsibility Act. National County Mutual Fire Insurance Company issued Johnson a Texas automobile liability policy. While driving his truck, Johnson collided with another vehicle, and Johnson's wife, who was a passenger in the truck, brought suit against her husband seeking compensation for her injuries. Johnson's insurance policy, however, contained a family member exclusion clause that precluded family members from recovering against Johnson. The Act at issue in Johnson provided,

> [N]o motor vehicle may be operated in this State unless a policy of automobile liability insurance in at least the minimum amounts to provide evidence of financial responsibility under this Act is in effect to insure against potential loss-

---

3. At oral argument, Tri–State contended that summary judgment was improper because a fact issue remained whether Southern County, upon receiving the bulletin, had a duty at least to advise Tri–State of the Commission's $500,000 insurance coverage requirement for commercial motor vehicles, or even cancel the policy. Because these arguments were not raised before the trial court, however, we will not address them.

4. Southern County's position is that, at the time the policy was issued, Tri–State was not a "motor carrier" as it was then defined, so Southern County was not required to provide a policy for $500,000 in insurance coverage. Tri–State's position is that the Commission's requirement, adopted January 2, 1995, that commercial carriers obtain a minimum of $500,000 in insurance coverage, applied to Tri–State.

es which may arise out of the operation of the vehicle.

*National County Mut. Fire Ins. Co. v. Johnson,* 879 S.W.2d at 2 (quoting TEX. REV.CIV. STAT. ANN. art. 6701h, § 1A(a)). The court recognized that the public policy behind the Act was to "protect all potential claimants from damages resulting from automobile accidents." In considering whether the family member exclusion was consistent with the legislative purpose of the Act, the court stated, "When the Legislature specifies a particular extent of insurance coverage any attempt to void or narrow such coverage is improper and ineffective." *Id.* at 3 (quoting *Unigard Security Ins. Co. v. Schaefer,* 572 S.W.2d 303, 307 (Tex.1978)). The court found that the family member exclusion contravened this public policy by "prevent[ing] a specific class of innocent victims, those persons related to and living with the negligent driver, from receiving any financial protection under an insurance policy." *Id.* at 3. Because of this inequitable limitation of coverage for potential claimants, the court held that the family member exclusion was ineffective and void because it violated the Act as well as the public policy underlying the Act. *See id.* at 5.

The question we must answer is whether the reasoning used to invalidate the family member exclusion in *Johnson* should be applied to invalidate a policy issued for less monetary coverage than the Uniform Act Regulating Traffic on Highways and the Texas Administrative Code title 16, § 5.24(c) require for commercial carriers. First, we consider whether the Uniform Act Regulating Traffic on Highways and the Texas Motor Vehicle Safety–Responsibility Act are analogous. The Texas Supreme Court noted that the public policy behind the Safety–Responsibility Act was to protect all claimants from damages resulting from automobile accidents. Similarly, the Texas Railroad Commission stated that Sections 5.21–5.32 of the Texas

Administrative Code were enacted to "ensure that commercial motor vehicles have adequate insurance coverage and comply with safety requirements for the public's protection." 19 Tex. Reg. 10093.

While the Acts may be analogous, we find that the inclusion of a family member exclusion in the policy in the *Johnson* case is very different from this case, where the insured and the insurer simply contracted for a lesser amount of monetary coverage than the insured is required by law to carry. By providing less coverage than a statute requires, the insurance company does not effect an inequity among potential claimants under the policy it issues, but treats all potential claimants equally and focuses on the potential risk of the insured. Moreover, the Safety–Responsibility Act expressly permits a driver to satisfy the minimum amounts of financial responsibility with one or more insurance policies: "The requirements for a motor vehicle liability insurance policy may be satisfied by a combination of policies of one or more insurance companies if the policies in combination meet the requirements." TEX. TRANSP. CODE ANN. § 601.079 (Vernon 1999). Although the Safety–Responsibility Act applies to motor vehicles generally, we believe that a combination of policies would also be permissible in obtaining the required amount of insurance for commercial motor vehicles under the Uniform Act Regulating Traffic on Highways. Because an insured may obtain the necessary monetary coverage by one or a combination of policies, there obviously is no requirement that one insurer must provide all of the coverage.

 The *Johnson* case is clearly distinguishable from the case here. The *Johnson* case, as well as the other cases primarily relied on by Tri–State,[5] involved exclusions of coverage that contravened the provisions of the law requiring full coverage for certain classes of injured persons or beneficiaries. Exclusions consti-

---

5. *Unigard Security Ins. Co. v. Schaefer,* 572 S.W.2d 303 (Tex.1978); *American Nat'l Ins.* *Co. v. Tabor,* 111 Tex. 155, 230 S.W. 397 (1921).

tute specific provisions in insurance policies that are part of the standard forms of policies mandated either by statutes or by authorized regulations. Because the insurance company prepares the standard forms of its insurance policies, it has control over what clauses and provisions are contained in the policies, and the insured has little or no bargaining power over the nature and extent of those provisions.[6] Therefore, the law places on the insurer the burden to include in its policies the various provisions relating to the *kind* and *extent* of coverage that the law requires. It is an entirely different situation with respect to the *amount* of insurance that an insured purchases. When the law mandates a certain amount of monetary coverage, a matter that is totally within the control of the insured and paid for by the insured, we believe the insured has the obligation to comply with the law and purchase the required insurance. In our judgment, it is entirely inappropriate and against public policy to place the burden on the insurer to force the insured to purchase a specific amount of insurance. We also note that the statute requiring the minimum amount of monetary coverage for commercial carriers seems to place the burden of securing the minimum amount of insurance on the motor carrier when it provides that every "motor carrier . . . *shall maintain*" the required insurance. TEX.REV.CIV. STAT. ANN. art. 6701d, § 139(c) (emphasis added). There is no language in the statute indicating that the carrier's insurer has the initial obligation to *provide* that minimum amount of coverage. Thus, we hold that the trial court properly granted judgment declaring that the policy insured Tri–State for $100,000.

■ We now consider the propriety of the trial court's injunction against Tri–State. The court's judgment provided:

Defendants are permanently enjoined from filing any other claim or action against Southern County Mutual Insurance Company, directly or indirectly, involving the insurance proceeds and claims at issue in this litigation or in connection with the underlying suit and/or the motor vehicle accident made the basis of the underlying suit.

Tri–State argues that the order grants more relief than was requested and grants more relief than is proper in a declaratory judgment action to determine the rights and obligations of the parties to an insurance contract.

■ In order to warrant injunctive relief, the petitioner must specify the precise relief sought, and the court has no power to grant relief beyond that requested. *Tarrant County, Texas, Comm'r Court v. Markham,* 779 S.W.2d 872, 877 (Tex.App.-Fort Worth 1989, writ denied); *Davies v. Unauthorized Practice Comm. of the State Bar of Texas,* 431 S.W.2d 590 (Tex.Civ. App.-Tyler 1968, writ ref'd n.r.e.). Southern County included in its motion for summary judgment the following request for relief:

The conflicting claims presented by the tort claimants, and the amount of such claims, makes it imperative that the tort claimants and the other Defendants herein be permanently enjoined from any further proceedings involving the funds tendered by Southern County into the registry of this Court, or in any way arising from or in connection with the underling suit and/or the motor vehicle accident made the basis of the underlying suit.

We conclude that this pleading is sufficient to support the injunction. The judgment generally tracked Southern County's pleadings and did not grant more relief than was requested.

■ However, an anti-suit injunction should be employed sparingly and with care. *University of Texas v. Morris,* 162

---

**6.** The law does allow the insured in some cases to reject types of coverage that are otherwise mandated.

Tex. 60, 344 S.W.2d 426, 429 (1961). Such a device should be used only in compelling circumstances. *Gannon v. Payne,* 706 S.W.2d 304, 306 (Tex.1986). Injunctive relief is appropriate only to address a threat to the court's jurisdiction, to prevent the evasion of important public policy, to prevent a multiplicity of suits, or to protect a party from vexatious or harassing litigation. *Golden Rule Ins. Co. v. Harper,* 925 S.W.2d 649, 651 (Tex.1996). The party seeking the injunction has the burden of showing that a clear equity demands the injunction. *Id.* (quoting *Christensen v. Integrity Ins. Co.,* 719 S.W.2d 161, 163 (Tex. 1986)). Even when an anti-suit injunction is warranted, it must be specific and limited, barring suit only on the same claims against the same defendants. *Sparkman v. Kimmey,* 970 S.W.2d 654, 657 (Tex. App.-Tyler 1998, writ denied) (citing *Farguson v. MBank, Houston, N.A.,* 808 F.2d 358, 360 (5th Cir.1986)).

 The decision to grant or deny a temporary or permanent injunction is within the sound discretion of the trial court. *Walling v. Metcalfe,* 863 S.W.2d 56, 58 (Tex.1993). Our review of the trial court's action is limited to determining whether the action constituted a clear abuse of discretion. *Id.* A trial court abuses its discretion by acting arbitrarily and unreasonably, without reference to guiding rules or principles, or misapplying the law to the established facts of the case. *See Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985).

In the trial court, Southern County did not allege that the injunction was necessary for any of the reasons set forth in *Golden Rule.* Instead, it argued that "[t]he conflicting claims presented by the tort claimants, and the amount of such claims" necessitated a permanent anti-suit injunction to ensure the finality of the trial court's judgment. Although Southern County contended at oral argument that the injunction was proper because it was necessary to prevent Tri–State from harassing Southern County with further litigation, it did not make this argument to the trial court, nor did it offer any evidence to support it.

 An anti-suit injunction is appropriate to prevent a multiplicity of suits and to protect a party from vexatious or harassing litigation. *Golden Rule Ins. Co. v. Harper,* 925 S.W.2d at 651. Although an injunction is a preventive device, injunctive relief is inappropriate where the party seeking the injunction has merely a fear or apprehension of the *possibility of injury. Frey v. DeCordova Bend Estates Owners Ass'n,* 647 S.W.2d 246, 248 (Tex.1983). A prerequisite for injunctive relief is actual injury, or the threat of imminent harm, or another's demonstrable intent to do that for which injunctive relief is sought. *Id.*Texas cases that have approved temporary and permanent injunctions to protect a party from vexatious or harassing litigation have done so based on evidence that a multiplicity of suits had been filed or on other evidence of harassment. *See, e.g., University of Texas v. Morris,* 344 S.W.2d at 428–29; *Chandler v. Chandler,* 991 S.W.2d 367, 404 (Tex.App.-El Paso 1999, pet. denied); *Estate of Dilasky,* 972 S.W.2d 763, 767 (Tex.App.-Corpus Christi 1998, no writ); *Sparkman v. Kimmey,* 970 S.W.2d at 658.

Southern County did not meet its burden to show that a clear equity demanded the injunction. At the time the injunction was sought, Tri–State had not instituted other suits. Southern County did not demonstrate that Tri–State had threatened to do so, nor did it show that Tri–State had stated that it intended to institute other suits for the purpose of harassment. Absent such evidence, injunctive relief is inappropriate.

The trial court, in granting the anti-suit injunction, did not state that the injunction was appropriate because the case fit within *Golden Rule* 's four categories. We find no evidence in the record showing that the anti-suit injunction was appropriate to prevent a multiplicity of suits, to provide pro-

tection from vexatious or harassing litigation, or to prevent a threat to the court's jurisdiction or the evasion of important public policy. In addition, by enjoining Tri–State from "filing any other claim or action against Southern County Mutual Insurance Company, directly or indirectly, involving the insurance proceeds and claims at issue in this litigation *or in connection with the underlying suit and/or the motor vehicle accident made the basis of the underlying suit,*" the injunction bars not only the claims at issue in this litigation but also additional claims, and for this reason is overly broad. We conclude that the anti-suit injunction was improper.

Tri–State also challenges Southern County's interpleader. It contends the interpleader was invalid because Southern County did not tender the full $500,000 it owed and did not tender the funds at any point unconditionally. On June 10, 1997, Southern County filed its petition for interpleader and deposited into the registry of the court a total of $95,000–$100,000 less $5,000, the amount it had already paid to Gala Rice in settlement of her property damage claim.

A disinterested stakeholder may interplead funds when they are the subject of conflicting claims and the holder is or may be exposed to double or multiple liability. Tex.R. Civ. P. 43. A petitioner in interpleader must prove (1) that he is subject to, or has reasonable grounds to anticipate, rival claims to the same fund or property, (2) that he has not unreasonably delayed in filing the interpleader action, and (3) that he has unconditionally tendered the funds into the court. *Id.; Daniels v. Pecan Valley Ranch, Inc.,* 831 S.W.2d 372, 385 (Tex. App.-San Antonio 1992, writ denied). Both of Tri–State's arguments address the third requirement.

■■■■ Tri–State argues that Southern County was required to tender $500,-000. We disagree. Southern County's right to successfully interplead is not dependent on the success of Tri–State's claim that the policy should be reformed to provide $500,000 in insurance coverage. An insurance company may maintain an interpleader suit if there exists a reasonable doubt, either of fact or law, as to which of rival claimants is entitled to the proceeds of the policy. *Great Am. Reserve Ins. Co. v. Sanders,* 525 S.W.2d 956, 958 (Tex.1975); *Holmquist v. Occidental Life Ins. Co. of California,* 536 S.W.2d 434, 437 (Tex.Civ. App.-Houston [14th Dist.] 1976, writ ref'd n.r.e). The purpose of interpleader is to provide relief for a stakeholder who, without interpleader, would be compelled to act as judge and jury at its own peril when faced with conflicting claims. *See generally, Petro Source Partners, Ltd. v. 3–B Rattlesnake Ref. (1990), Ltd.,* 905 S.W.2d 371, 378 (Tex.App.-El Paso 1995, writ denied); *Cable Communications Network, Inc. v. Aetna Cas. & Sur. Co.,* 838 S.W.2d 947, 950–51 (Tex.App.-Houston [14th Dist.] 1992, no writ); *MCZ, Inc. v. Triolo,* 708 S.W.2d 49, 57 (Tex.App.-Houston [1st Dist.] 1986, writ ref'd n.r.e.). Southern County held in its possession a policy by the terms of which it was liable for up to $100,000. In its petition for interpleader, Southern County recognized that each tort claimant, Kimberly Rice, individually and as next friend of Kara Garrett, Gala Rice, and Kourtney Martin, all had rival claims to the same remaining proceeds of the policy and, thus, Southern County properly deposited with the court the remaining insurance benefits, amounting to $95,000.

■■■■ In addition, an interpleader action requires only that the stakeholder deposit all of the disputed property he has in his possession, even though it might be less than is claimed by one or more of the defendants. *Petro Source Partners, Ltd. v. 3–B Rattlesnake Ref. (1990), Ltd.,* 905 S.W.2d at 378 (quoting *Murphy v. Travelers Ins. Co.,* 534 F.2d 1155 (5th Cir.1976)).

■■■■ Tri–State also contends that Southern County's tender was invalid because it was conditioned on the subsequent ruling of the trial court. Tri–State is correct that the *tender* of property is ineffec-

tive if it is accompanied by conditions which the debtor has no right to impose, such as a right of offset. *See Bank One, Texas, N.A. v. Taylor*, 970 F.2d 16 (5th Cir.1992). We need not address whether the alleged condition was indeed a condition or was improper. Under Texas procedure, "[i]f the ... fund is not actually paid into the registry of the court, it must be tendered and the tender, in order to be valid, must be unconditional." *Security Nat'l Bank of Lubbock v. Washington Loan & Fin. Corp.*, 570 S.W.2d 40, 43 (Tex.Civ.App.-Dallas 1978, writ dism'd); *Cockrum v. Cal–Zona Corp.*, 373 S.W.2d 572, 574 (Tex.Civ.App.-Dallas 1963, no writ); *Bennett v. Smead*, 180 S.W.2d 663, 664 (Tex.Civ.App.-Texarkana 1944, no writ). Thus, the requirement for unconditional delivery does not apply when the funds are actually deposited into the registry of the court. Indeed, once the funds are deposited into the registry of the court, they are subject to the control and orders of the court. *ITC Cellular, Inc. v. Morris*, 909 S.W.2d 182, 186 (Tex.App.-Texarkana 1995, no writ); *Northshore Bank v. Commercial Credit Corp.*, 668 S.W.2d 787, 790 (Tex.App.-Houston [14th Dist.] 1984, writ ref'd n.r.e.). Southern County did more than tender the amount of the policy limits; it actually deposited the $95,000 with the trial court.

For the reasons stated, the judgment of the trial court is reformed to deny Southern County's petition for injunction. The injunction is dissolved. In all other respects, and as reformed, the judgment of the trial court is affirmed.