**NAUTILUS INSURANCE COMPANY,**
**Plaintiff,**

v.

**NICKY & CLAIRE'S DAY CARE,**
**INC., et al., Defendants.**

**No. EP–08–CV–297–DB.**

United States District Court,
W.D. Texas,
El Paso Division.

Feb. 26, 2009.

---

John C. Tollefson, Stephen Andrew Melendi, Tollefson Bradley Ball & Mitchell, LLP, Dallas, TX, for Plaintiff.

Duane A. Baker, Attorney at Law, J. Roberto Oaxaca, Oaxaca, Bernal & Associates, Richard S. Feldman, Mounce, Green, Myers, Safi & Galatzan, P.C., Alejandro Duran, Jr., James F. Scherr, El Paso, TX, James F. Scherr, Robin Kennedy Johnston, Hermes Sargent Bates L.L.P., Dallas, TX, Lawrence A. Levy, Richard S. Feldman, Rivkin Radler, LLP, Uniondale, NY, for Defendants.

Oscar Bustamante, El Paso, TX, pro se.

## MEMORANDUM OPINION AND ORDER

DAVID BRIONES, District Judge.

On this day the Court considered Plaintiff Nautilus Insurance Company's ("Nautilus") "Motion For Summary Judgment," filed in the above-captioned cause on October 21, 2008. Defendant Jessica Reyes ("Reyes") and Defendant Fireman's Fund County Mutual Insurance Company ("Fireman's Fund") filed separate Responses on October 28, 2008, and November 3, 2008, respectively. On November 5, 2008, Nautilus filed its Reply. Subsequently, Reyes filed a "Motion For Continuance Of Plaintiff's Motion For Summary Judgment," which the Court granted on December 1, 2008.[1] After due consideration, the Court is of the opinion that the Court's Order of December 1, 2008, granting a continuance of Nautilus' Motion, be vacated and that Nautilus' Motion be granted for the reasons that follow.

### BACKGROUND

This case arises from a collision on November 4, 2005, involving a vehicle owned by Nicky & Claire's Daycare, Inc. ("Nicky & Claire's"). Nautilus issued a general liability insurance policy, policy number NC388404 with effective dates of December 6, 2004, through December 6, 2005, to Nicky & Claire's ("the Policy"). The Policy includes an "auto exclusion," stating that the Policy does not cover " 'bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any … 'auto' … that is owned or operated by … any insured."

---

1. Specifically, Reyes filed her Motion for Continuance on November 5, 2008. On November 6, 2008, Nautilus filed its Response. On November 12, 2008, Reyes provided a Supplement to her Motion for Continuance, and Reyes filed her Reply on November 25, 2008.

At the time of the collision, E.T. was allegedly in Nicky & Claire's' vehicle and, as a result, suffered injuries. Reyes, who enters this action individually and as next of friend of E.T., and Defendant Erika Marquez ("Marquez"), who alleges she was struck by Nicky & Claire's' vehicle during the collision, brought suit against Nicky & Claire's, Nautilus, and others in the 34th Judicial District Court of El Paso County, Texas ("state court"). Specifically, Reyes alleges in her state action pleading that on or about November 4, 2005, Brenda Sulema ("Sulema"), in the course and scope of her employment with Nicky & Claire's, was driving Nicky & Claire's' vehicle in which E.T., age five (5), was a passenger without child protective seating. Sulema was traveling westbound on Pershing in El Paso, Texas, when another vehicle, traveling northbound on Birch, failed to yield the right of way, thus colliding with Nicky & Claire's' vehicle. In Marquez's state action pleading, Marquez alleges that she was standing behind her vehicle when Sulema's vehicle, after being struck, slid sideways and collided with Marquez, crushing her between her vehicle and another parked vehicle.

In the state action, Reyes and Marquez assert various tort claims based on alternative theories of negligence against certain state action defendants. Reyes and Marquez allege that Sulema was negligent in her driving as well as in failing to secure E.T. in a child protective seat. They further allege that Nicky & Claire's was negligent for failing to operate safe equipment and failing to properly hire, train, educate, and supervise its drivers. Reyes' and Marquez's state action pleadings also include declaratory judgment actions against Nautilus and Fireman's Fund. Specifically, Reyes sought a declaration from state court that Nautilus and/or Fireman's Fund must provide coverage as required by Tex-

as law for Nicky & Claire's' alleged negligence in the instant collision. Nautilus moved for the state court to dismiss all claims against Nautilus, arguing that Reyes has no rights to assert against Nautilus as a judgment has not yet been entered against the insured, Nicky & Claire's. On December 29, 2008, the state court granted Nautilus's Motion to Dismiss, dismissing all claims against Nautilus in the state action without prejudice.

On August 1, 2008, Nautilus filed a Complaint in federal court seeking a declaratory judgment to determine whether Nautilus has a duty to defend and/or indemnify Defendants Nicky & Claire's and Oscar Bustamante ("Bustamante"), the owner and registered agent for Nicky & Claire's. The instant Motion followed.

## STANDARD

Summary judgment should be granted only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is inappropriate where a material fact is "genuine" in that a reasonable jury could return a verdict for the nonmoving party. *Id.* Thus, the Court considers all the evidence in the record, but makes no determination as to credibility of the evidence. *See id.* Further, the Court views factual questions and inferences in a light most favorable to the nonmovant. *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir.2002).

The moving party bears the initial burden of identifying those portions of the pleadings, the discovery, and the disclosure materials on file which it believes

demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "If the moving party fails to meet this burden, the motion must be denied, regardless of the nonmovant's response." *Tubacex, Inc. v. M/V Risan,* 45 F.3d 951, 954 (5th Cir.1995). If the movant meets this burden, however, the nonmovant must designate specific facts showing that a genuine issue for trial exists. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. The nonmovant discharges this burden by alleging more than mere legal conclusions drawn from the pleadings. *Anderson,* 477 U.S. at 248–49, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (stating the nonmovant may not successfully oppose summary judgment by merely citing the pleadings). Instead, the nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505. If the nonmovant fails to make a sufficient showing on an essential element of his case, the movant is entitled to summary judgment, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

## DISCUSSION

In the instant Motion, Nautilus argues that no genuine issue as to any material fact exists and prays that the Court enter a declaratory judgment that Nautilus does not have a duty to defend or indemnify Nicky & Claire's and Bustamante for injuries arising from the collision. In her Response, Reyes asserts as genuine issues of material fact whether Nautilus knew that Nicky & Claire's was purchasing the Policy in order to comply with section 42.049 of the Texas Human Resources Code ("section 42.049") and whether Nautilus issued a Certificate of Insurance declaring that the Policy complied with section 42.049.[2] As support for

---

2. Subsequent to Nautilus' filing of the instant Motion, Reyes filed a Motion For Continuance under Federal Rule of Civil Procedure 56(f). Under Rule 56(f), a court may order continuance of a motion for summary judgment to allow for discovery if the party opposed to summary judgment "shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition." FED. R.CIV.P. 56(f). Reyes submitted an affidavit from her attorney specifying that the following discovery is essential to the instant Motion: (1) what Nautilus and its agent provided to the State of Texas in order for the State of Texas to license Nicky & Claire's, (2) whether "Nautilus and its agent knew of the Texas Day Care Licensing Laws before issuing this policy and knew what their obligations of coverage are," and (3) discovery of other items related to whether Nautilus violated the Texas Surplus Lines Act ("SLA") by issuing a surplus lines insurance policy to Nicky & Claire's.

Reyes raised the first two (2) factual issues in her Response to Nautilus' Motion for Summary Judgment, and the Court addresses them in the instant Opinion and Order. With regard to the third factual issue, Reyes never expressly asserts that Nautilus' alleged violation of the SLA would result in Nautilus having a duty to defend or indemnify Nicky & Claire's and Bustamante. Nevertheless, the Court considers and dismisses this argument below.

The SLA requires surplus lines insurers and surplus lines agents to comply with certain requirements in order to protect the insured, since surplus lines insurers are not regulated by the State of Texas. *See* TEX. INS.CODE ANN. § 981.001 (Vernon 2008). For example, a surplus lines insurer should make an effort to obtain regular insurance for the insured before issuing a surplus lines insurance policy. TEX. INS.CODE ANN. § 981.004(a)(1) (Vernon 2008). Additionally, the surplus lines insurer must be "eligible" and must issue insurance policies through an authorized surplus lines agent. TEX. INS.CODE ANN. § 981.004(a)(2). Nevertheless, a policy provided by an insurer in violation of the SLA remains enforceable by the insured. TEX. INS.CODE ANN. § 981.005 (Vernon 2008). Therefore, even if Nautilus

these assertions, Reyes introduced an admission by Nicky & Claire's that Nicky & Claire's procured the Policy in order to comply with section 42.049, which requires a child-care center to carry insurance sufficient to cover $300,000 for each occurrence of negligence. *See* TEX. HUM. RES.CODE ANN. § 42.049(b) (Vernon 2008). Additionally, Reyes argues that Nautilus' Motion for Summary Judgment fails as a matter of law. First, Reyes asserts that the Policy's auto exclusion is void as contrary to public policy and that Nautilus thus has a duty to defend or indemnify Nicky & Claire's and Bustamante. Second, Reyes argues that Nautilus incurred said duty because Nicky & Claire's allegedly violated section 746.5607 of the Texas Administrative Code by not providing E.T. with protective seating. In its Response, Fireman's Fund agrees with Nautilus that Nicky & Claire's' failure to comply with section 42.049 does not affect Nautilus' duty. Additionally, Fireman's Fund clarifies that Nautilus does not seek a declaratory judgment with regard to Fireman's Fund's duty to Nicky & Claire's and Bustamante and argues that Nautilus cannot recover attorneys' fees and court costs by succeeding in its declaratory judgment action.[3]

For the purposes of deciding the Motion for Summary Judgment, the Court must view factual questions and inferences in a light most favorable to Reyes and her co-Defendants. *See Calbillo*, 288 F.3d at 725. Accordingly, the Court assumes that Nautilus provided a Certificate of Insurance to the State of Texas stating that the Policy

met Nicky & Claire's' statutory obligations, that Nautilus knew of those obligations before issuing the Policy, that Nautilus knew Nicky & Claire's purchased the Policy with the intent of fulfilling those obligations, and that Nicky & Claire's failed to provide proper protective seating for E.T. The Parties do not contest that Texas law applies to this diversity action.

■ Under Texas law, when an insured is sued by a third party, a liability insurer's duty to defend is determined by comparing the facts alleged in the third party's petition against the policy terms. *Mid–Continent Casualty Co. v. JHP Dev., Inc.*, 557 F.3d 207, 212–13 (5th Cir.2009) (applying Texas law); *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 531 (5th Cir.2004) (applying Texas law). According to this "eight-corners rule," "[r]esort to evidence outside the four corners of these two documents is generally prohibited." *JHP Dev., Inc.*, 557 F.3d at 212. Thus, an insurer incurs a duty to defend not based on the truth or falsity of the allegations, but whenever "a plaintiff's factual allegations … potentially support a covered claim." *Id.*

■ The duty to defend is broader than the duty to indemnify. *Id.* An insurer incurs the duty to indemnify based on the facts actually established in the underlying suit. *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821 (Tex.1997). While the "duty to indemnify is generally not ascertainable until after the insured has been held liable, it is justiciable prior to a finding of liability when the same

violated the SLA by issuing the Policy, Nautilus would still have a duty to defend or indemnify Nicky & Claire's and Bustamante for claims covered by the Policy. Thus, whether Nautilus violated the SLA is not a genuine material fact that precludes the Court from determining Nautilus' duty to defend and indemnify Nicky & Claire's and Bustamante. Accordingly, this discovery is not essential to

Reyes' argument against Nautilus' Motion for Summary Judgment. *See* FED.R.CIV.P. 56(f).

3. Nautilus does not ask the Court to determine Fireman's Fund's duty to defend or indemnify Nicky & Claire's and Bustamante. Accordingly, the instant Opinion and Order addresses only Nautilus', not Fireman's Fund's, duty.

reasons negating the duty to defend also negate any duty to indemnify." *Lincoln Gen. Ins. Co. v. Aisha's Learning Ctr.*, 468 F.3d 857, 858–59 (5th Cir.2006) (applying Texas law). Accordingly, the court may enter a judgment that the insurer has no duty to indemnify if the insurer has no duty to defend. *W. Heritage Ins. Co. v. River Entm't*, 998 F.2d 311, 315 (5th Cir. 1993) (applying Texas law); *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex.1997).

To determine Nautilus' duty to defend or indemnify, the Court must preliminarily consider whether Nautilus' knowledge that Nicky & Claire's was purchasing the Policy to comply with section 42.049 and whether Nautilus' possible issuance of a Certificate of Insurance declaring that the Policy complied with section 42.049 are genuine material facts. The Court does so by interpreting the Policy to decide whether such extrinsic evidence is material. If the Court finds that the extrinsic evidence is not material, then the Court may address the underlying legal issues. First, the Court examines Reyes' argument that the Policy's auto exclusion is void under public policy. Second, the Court considers Nautilus' argument that the Policy does not provide coverage for the facts alleged in Reyes' and Marquez's state court pleadings and that Nautilus therefore has no duty to defend or indemnify Nicky & Claire's and Bustamante. Third, the Court entertains Reyes' argument that Nautilus has a duty to defend and indemnify due to Nicky & Claire's failure to provide proper protective seating for E.T. Finally, the Court addresses Fireman's Fund's argument that Nautilus cannot receive attorney's fees and court costs.

### A. Policy interpretation

■■■■ Preliminarily, the Court must interpret the Policy and determine whether Reyes has presented a genuine issue of material fact that must be reserved for trial. Under Texas law, "[i]nsurance policies are controlled by rules of interpretation and construction which are applicable to contracts generally." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995). Courts must interpret policies "to ascertain the true intent of the parties as expressed in the instrument." *Id.* A policy is unambiguous when a court can give it definite or certain legal meaning. *Id.* "Parol evidence is not admissible for the purpose of creating an ambiguity." *Id.* Rather, a court must first determine whether the contract is ambiguous before considering the parties' interpretation and admitting extraneous evidence. *Id.*

■■■■ An ambiguity in a contract can either be "patent" or "latent." *Id.* "A patent ambiguity is evident on the face of the contract." *Id.* If the ambiguity only arises when a contract is applied to the subject matter with which it deals by reason of some collateral matter, the contract is latently ambiguous.[4] *Id.* If a latent ambiguity arises from the application of the contract, then the court can admit parol evidence to ascertain the true intention of the parties as expressed in the agreement. *Id.*; *Murphy v. Dilworth*, 137 Tex. 32, 36, 151 S.W.2d 1004 (Tex.1941). However, "[t]he ambiguity must become evident when the contract is read in context of the surrounding circumstances, not after parol evidence of intent is admitted to create an ambiguity." *CBI Indus., Inc.*, 907 S.W.2d at 521. In short, extrinsic evidence may

---

4. For example, a contract that states certain goods must be delivered to a greenhouse on Main Street is clear on its face, but if there are two (2) greenhouses on Main Street, the contract is latently ambiguous. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 n. 4 (Tex.1995).

be admissible only "to give the words of a contract a meaning consistent with that to which they are reasonably susceptible." *Id.* "If the contract language is not fairly susceptible of more than one legal meaning or construction, however, extrinsic evidence is inadmissible to contradict or vary the meaning of the explicit language of the parties' written agreement." *Id.*

Here, the Policy is clear on its face. Reyes does not argue otherwise. First, the Policy contains a merger clause that the Policy "contains all the agreements between [Nicky & Claire's and Busta- mante] and [Nautilus] concerning the in- surance afforded." Second, the language of the auto exclusion is clear. Under the "Exclusions" section of the Commercial General Liability Coverage Form, the Poli- cy states:

> This insurance does not apply to: ...
>
> (g) Aircraft, Auto Or Watercraft
>
> 'Bodily injury' or 'property damage' aris- ing out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured .....
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hir- ing, employment, training or monitoring of others by that insured, if the 'occur- rence' which caused the 'bodily injury' of 'property damage' involved the owner- ship, maintenance, use or entrustment to others of any aircraft, 'auto' or water- craft that is owned or operated by or rented or loaned to any insured.

 In applying the Policy with the auto exclusion to the facts alleged in Reyes' and Marquez's state action plead- ings, no latent ambiguity arises that neces- sitates the introduction of extrinsic evi-

dence to determine the intent of Nautilus, Nicky & Claire's, and Bustamante at the time of contract formation. *See id.* at 520. In short, the Court is able to apply the auto exclusion to the alleged facts and determine whether the Policy covers the collision, as explained in Section C below. Since the Policy unambiguously includes the auto exclusion, the Court cannot con- sider an extrinsic Certificate of Insurance provided by Nautilus. Likewise, evidence of Nautilus' knowledge of Nicky & Claire's intent to comply with section 42.049 by purchasing the Policy is equally inadmissi- ble. Therefore, Reyes raises no genuine issue of material fact that would affect the outcome of the instant action under the governing law.[5] *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

### B. Void for Public Policy

 As the Court has found that the Policy includes the auto exclusion, the Court next turns to Reyes' argument that the auto exclusion is void as a matter of public policy. Contractual agreements may be invalidated on grounds of public policy, but this public policy exception is "to be applied cautiously and only in plain cases involving dominant public interests." *Fidelity & Deposit Co. of Md. v. Conner,* 973 F.2d 1236, 1241 (5th Cir.1992). Unless the state courts or legislature affirmatively express "an overriding public policy," a federal court must enforce the contractual agreement according to its plain meaning. *Aero Int'l, Inc. v. U.S. Fire Ins. Co.,* 713 F.2d 1106, 1109 (5th Cir.1983). To deter- mine whether an overriding public policy exists, a court examines whether the stat- ute at issue is regulatory in nature, on whom the statute places the burden for compliance, and whether it expressly

---

**5.** Accordingly, Reyes' Motion for Continuance is without merit as the discovery she seeks is not essential for the Court to decide Nautilus'

Motion for Summary Judgment. *See* FED. R.CIV.P. 56(f).

states an overriding public policy. *See Scottsdale Ins. Co. v. Tex. Sec. Concepts & Investigation,* 173 F.3d 941, 943 (5th Cir. 1999) (applying Texas law); *Nat'l County Mut. Fire Ins. Co. v. Johnson,* 879 S.W.2d 1, 2 (Tex.1993); *Tri–State Pipe & Equip., Inc. v. S. County Mut. Ins. Co.,* 8 S.W.3d 394, 399–400 (Tex. Ct. Appeals–Texarkana 1999).

Reyes argues that the instant case is similar to *National County Mutual Fire Insurance Company v. Johnson.* In *Johnson,* the Supreme Court of Texas found a family member exclusion in an auto insurance policy void because it was inconsistent with the public policy underlying the Texas Motor Vehicle Safety–Responsibility Act ("MVSRA"). 879 S.W.2d 1, 2 (Tex.1993). The court found that amendments to the MVSRA to mandate auto liability insurance clearly reflected the legislature's purpose "to protect claimants from losses by requiring all drivers to be responsible for damages arising out of their use of an automobile." *Id.* The State Board of Insurance had approved the family member exclusion, but the court held that the exclusion "prevents a specific class of innocent victims, those persons related to and living with the negligent driver, from receiving financial protection under an insurance policy." *Id.* at 3. As such, the exclusion was inconsistent with the purposes of MVSRA and thus ineffective. *Id.*

Nautilus distinguishes the instant case from *Johnson* and relies instead on *Scottsdale Insurance Company v. Texas Security Concepts and Investigation ("Texas Security"),* a decision issued by the United States Court of Appeals for the Fifth Circuit ("Fifth Circuit"). 173 F.3d 941 (5th Cir.1999) (applying Texas law). In *Texas Security,* Scottsdale Insurance Company ("Scottsdale") contracted with Texas Security, which provided security for an apartment complex, a liability insurance policy

with an assault and battery exclusion. *Id.* at 942. After a Texas Security employee was charged with assaulting and raping two (2) women, Scottsdale sought a declaratory judgment that it had no duty to defend or indemnify Texas Security because of the exclusion. *Id.* The statute at issue, Texas Revised Civil Statute Art. 4413(29bb), § 40(a), regulates the licensing of private security agencies. *Id.* The statute requires that the licensing board verify that the security agency applying for a license holds a general insurance policy that will cover "all sums which the licensee becomes legally obligated to pay as damages because of bodily injury, property damage, or personal injury, caused by an event involving the principal, its servants, officers, agents or employees in the conduct of any business licensed under this Act." Tex.Rev.Civ. Stat. Art. 4413(29bb), § 40(a) (Vernon 1999). The Fifth Circuit noted that the statutes addresses the security business, not the insurance company. *Tex. Sec.,* 173 F.3d at 943. Additionally, the Fifth Circuit found that the statute "is regulatory in nature and does not affirmatively establish a public policy of the state that would override the parties' agreement." *Id.* Thus, the Fifth Circuit held that an assault and battery exclusion was not void for public policy. *Id.*

Similarly, the Court of Appeals of Texas, Texarkana, held that, despite *Johnson,* an insured's policy coverage did not automatically increase if a statute enacted later increased the statutorily required minimum insurance. *Tri–State Pipe & Equip., Inc.,* 8 S.W.3d at 396. The court distinguished *Texas Security* from *Johnson,* observing that the statute at issue in *Tri–State* "expressly permits a driver to satisfy the minimum amounts of financial responsibility with one or more insurance policies." *Id.* at 399. Further, the statute seems to place the burden on the insured to secure the required minimum amount of

monetary coverage and lacks any language indicating that the insurer has the obligation to provide such coverage.[6] *Id.* at 399–400. Thus, the court noted that "it is entirely inappropriate and against public policy to place the burden on the insurer to force the insured to purchase a specific amount of insurance." *Id.* at 400.

In the instant case, Reyes argues that the auto exclusion in the Policy is void for public policy. Reyes asserts that the Legislature specifically required child-care centers to provide a minimum amount of insurance coverage and that the Policy's auto exclusion, like the family member exclusion in *Johnson,* improperly attempts to narrow the required coverage. *See Johnson,* 879 S.W.2d at 3. Reyes further argues that section 42.049 places the burden on Nautilus to provide a Policy that complies with the statute because the insured has little or no bargaining power over the nature and extent of the exclusions. Nautilus replies that the statute governing child-care centers is regulatory in nature and places the burden on Nicky & Claire's— not Nautilus—to secure the required insurance coverage, and that the statute does not provide a public policy that would override Nautilus and Nicky & Claire's' agreement. The Court finds Reyes' arguments unconvincing.

The statute states its purpose "is to protect the health, safety, and well-being of the children of the state who reside in child-care facilities by establishing statewide minimum standards for their safety and protection and by regulating the facilities through a licensing program." TEX. HUM. RES.CODE ANN. § 42.001 (Vernon 2008). Accordingly, in order to operate a child-care facility, a person must have a license issued by the Texas Department of Family and Protective Services ("the Department"). TEX. HUM. RES.CODE ANN. §§ 40.001(3), 42.041(a) (Vernon 2008). Section 42.049 of the Human Resources Code requires that a childcare license holder "maintain liability insurance coverage in the amount of $300,00 for each occurrence of negligence" and that the policy "cover injury to a child that occurs while the child is on the premises or in the care of the license holder." TEX. HUM. RES.CODE ANN. § 42.049(a). Additionally, section 42.049 requires the license holder to "file with the department a certificate or other evidence from an insurance company showing that the license holder has an unexpired and uncancelled insurance policy or contract that meets the requirements of this section."[7] TEX. HUM. RES.CODE ANN. § 42.049(b). Further, the statute provides certain remedies for violations of its provisions, all to be instituted by the Department against the license holder, not

6. While the *Tri–State* court emphasizes the difference between contracting for an amount of coverage and permitting exclusions, the court does so because, in the context of auto insurance, it believes the insured has little bargaining power over exclusions contained within those policies. *Tri–State Pipe & Equip., Inc. v. S. County Mut. Ins. Co.,* 8 S.W.3d 394, 399–400 (Tex. Ct. Appeals–Texarkana 1999). In contrast, courts have consistently upheld auto exclusions in general liability contracts. *See, e.g., Lincoln Gen. Ins. Co. v. Aisha's Learning Ctr.,* 468 F.3d 857, 859–60 (5th Cir.2006) (applying Texas law in case involving auto exclusion); *Empire Fire and*

*Marine Ins. Co. v. Brantley Trucking, Inc.,* 220 F.3d 679, 682 (5th Cir.2000) (same).

7. The Court notes that, despite Reyes' repeated assertions that Nautilus or Fireman's Fund must have filed a Certificate of Insurance with the State of Texas representing that Nicky & Claire's was insured to meet the requirements of section 42.049, the statute does not require that an *insurer* file such a certificate. Rather, section 42.049 requires that *license holder*—Nicky & Claire's—"file with the department a certificate *or other evidence* from an insurance company." TEX. HUM. RES.CODE ANN. § 42.049(b) (emphasis added).

against the license holder's insurer. *See* TEX. HUM. RES.CODE ANN. §§ 42.0705–42.078. For example, if a license holder violates Chapter 42 of the Human Resources Code, the Department may reprimand the license holder or revoke or suspend the license. TEX. HUM. RES.CODE ANN. § 42.0705. The Department may also file suit against the license holder for civil penalties and injunctive relief. TEX. HUM. RES.CODE ANN. §§ 42.074–42.075.

Thus, the statute does not expressly establish a Texas public policy that would override the agreement by Nicky & Claire's and Nautilus as embodied in the Policy. *See Texas Security*, 173 F.3d at 943. First, the statute at issue regulates child-care facilities. *See* TEX. HUM. RES. CODE ANN. §§ 42.001 *et seq.* Second, the statute places the burden on the license holder—Nicky & Claire's—to secure the required insurance and provide proof of such insurance to the Department. *See* TEX. HUM. RES.CODE ANN. § 42.049. The statute does not require that such insurance be secured in only one (1) policy with one (1) insurance company. *See Tri–State Pipe & Equip., Inc.*, 8 S.W.3d at 399. Nor does the statute expressly require insurers to investigate all of an insured's policies before issuing the insured a policy. Accordingly, a license holder could comply with the statute by securing a general liability policy with an auto exclusion so long as the license holder also procured an auto policy. Indeed, Nicky & Claire's had a separate auto policy provided by Fireman's Fund. Finally, the express purpose of the statute—to protect children's well-being and regulate child-care centers—does not impose any obligation on the insurers and can still be obtained by a licensed child-care center, provided it procured the correct combination of insurance

policies. Given the regulatory nature of the statute, the burden it places on the insured to provide the Department with proof of sufficient insurance, and the absence of an overriding public policy in conflict with the auto exclusion, the Court finds that the Policy's auto exclusion is not void for public policy and that, therefore, Nautilus' Motion for Summary Judgment cannot be denied on those grounds.

## C. Duty to Defend and Indemnify

■ Having thus determined that the Policy includes the auto exclusion, the Court now considers Nautilus' argument in favor of summary judgment. Specifically, the Court determines whether the facts alleged in Reyes' and Marquez's state action pleadings are within the scope of the Policy's coverage. *See Aisha's Learning Ctr.*, 468 F.3d at 858. If they are, then Nautilus has a duty to defend Nicky & Claire's. *See id.* If Nautilus has no duty to defend, then the Court may find that Nautilus has no duty to indemnify because, no matter what facts are established in the underlying suit, Nautilus would have no duty to indemnify. *See id.* at 858–59; *Farmers Tex. County*, 955 S.W.2d at 84.

Again, the Policy excludes coverage for " '[b]odily injury' . . . arising out of the ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . owned or operated by or rented or loaned to any insured." Further, the exclusion also applies to "claims against any insured alleg[ing] negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the 'occurrence' which caused the 'bodily injury' . . . involved the ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . that is owned or operated by . . . any insured." [8]

---

8. The Policy defines "auto" as "a land motor vehicle, trailer or semi-trailer designed for travel on public roads," "bodily injury" as "bodily injury, sickness or disease," and "occurrence" as "an accident."

 Under Texas law, "'[f]or liability to 'arise out of' the use of a motor vehicle, a causal connection or relation must exist between the accident or injury and the use of the motor vehicle.'" *Aisha's Learning Ctr.*, 468 F.3d at 859 (quoting *Mid–Century Ins. Co. v. Lindsey*, 997 S.W.2d 153, 156 (Tex.1999)). For an injury to fall within the "use" coverage of an automobile policy or an auto exclusion:

(1) the accident must have arisen out of the inherent nature of the automobile, as such, (2) the accident must have arisen within the natural territorial limits of an automobile, and the actual use must not have terminated, (3) the automobile must not merely contribute to cause the condition which produces the injury, but must itself produce the injury.

*Lindsey*, 997 S.W.2d at 157; *see Aisha's Learning Ctr.*, 468 F.3d at 860 (applying *Lindsey* factors). Employing this test, the Fifth Circuit found an auto exclusion similar to the instant auto exclusion to preclude coverage of a child's injuries incurred when, after transporting the child to the daycare, the daycare worker left the child in the parked vehicle for several hours. *Aisha's Learning Ctr.*, 468 F.3d at 860–61.

In Reyes' and Marquez's state action pleadings, they allege that a Nicky & Claire's employee, driving a vehicle owned by Nicky & Claire's, collided with another vehicle, causing injuries to Marquez and E.T. E.T. is a child who was entrusted to the care of Nicky & Claire's, was in Nicky & Claire's vehicle, and did not have proper child seat protection. Marquez was standing on the street when she was hit by Nicky & Claire's vehicle. The collision arose out of the inherent nature of the vehicle within its territorial limits, and the vehicle produced the injuries. Clearly, these injuries fall within the Policy's auto exclusion. *See Lindsey*, 997 S.W.2d at 157. Further, Reyes' and Marquez's allegations of Nicky & Claire's negligent vehicle maintenance and hiring, training, and supervision of drivers are also precluded by the Policy's auto exclusion, as those allegations relate only to use of motor vehicles. Therefore, the Court finds that Nautilus does not have a duty to defend Nicky & Claire's and Bustamante. As the duty to defend is broader than the duty to indemnify, and the Court finds that the facts alleged in the state action are not within the Policy coverage, the Court also finds that Nautilus has no duty to indemnify Nicky & Claire's and Bustamante. Thus, the Court is of the opinion that Nautilus' Motion for Summary Judgment should be granted.

**D. 40 Texas Administrative Code § 746.5607—protective seating**

 Next, the Court considers Reyes' argument that Nautilus has a duty to defend and indemnify Nicky & Claire's and Bustamante because Nicky & Claire's allegedly violated section 746.5607 of the Texas Administrative Code, Title 40. Section 746.5607 requires a child-care center to secure a child in a vehicle with appropriate protective seating according to the manufacturer's instructions and the child's age, height, and weight. 40 Tex. Admin. Code § 746.5607. The statute does not state that the child-care center's insurance company has the burden of ensuring that the child-care center provides the appropriate protective seating. Nevertheless, Reyes argues that Nautilus failed to perform its duties to ensure that Nicky & Claire's complied with this Texas law. The Court marvels at the duty this would impose on insurers, to be present every time a child is transported by the child-care center in order to monitor the child-care center's use of proper protective seating. While Nicky & Claire's may have violated section 746.5607 according to Reyes' alleged facts, Nautilus is not liable for such a violation.

Further, such a violation would not alter the Policy interpretation or the Court's eight-corner analysis to determine Nautilus' duty to defend. As explained above, an insurer's duty to defend is determined by comparing the alleged facts to the policy agreement. *See Loving Home Care, Inc.*, 363 F.3d at 531. Under this eight-corner's rule, a court would not consider other violations unless they somehow altered the terms of the policy agreement. Here, the Court already explained that the Policy is clear and that the Court does not consider extrinsic evidence in absence of contractual ambiguities.[9] Therefore, Nicky & Claire's alleged violation of section 746.5607 does not impose on Nautilus a duty to defend or indemnify Nicky & Claire's or Bustamante and is not grounds for denying Nautilus' Motion for Summary Judgment.

### E. Attorney's fees

■ Finally, the Court addresses Nautilus' ability to obtain attorneys' fees and court costs. While the Federal Declaratory Judgment Act does not independently authorize the award of attorney's fees, the Texas Declaratory Judgement Act does. *Compare* 28 U.S.C.A. § 2202 (West 2006) *with* TEX. CIV. PRAC. & REM.CODE §§ 37.001 *et seq.* (Vernon 2008). Nevertheless, the Fifth Circuit has held that "the Texas Act is procedural rather than substantive, and therefore it does not authorize an award of costs in a federal court declaratory judgement diversity action." *Travelers Indem. Co. v. Citgo Petroleum Corp.*, 166 F.3d 761, 772 (5th Cir.1999). The instant case is a declaratory judgment action in federal court based on 28 U.S.C. § 1332 diversity

jurisdiction. Accordingly, the Court finds that Nautilus cannot receive an award of costs.

### CONCLUSION

After due consideration, the Court finds that the pleadings and affidavits do not show that there is any genuine issue as to any material fact and that Nautilus does not have a duty to defend or indemnify Nicky & Claire's and Bustamante. The Policy unambiguously includes an auto exclusion, which is not void for public policy. The statute in question is regulatory in nature, imposes the duty of compliance on the license holder—not the insurer, and does not express an overriding public policy that would negate Nautilus' and Nicky & Claire's' express agreement as embodied in the Policy. Further, Nicky & Claire's' alleged violation of section 746.5607 does not alter Nautilus' lack of duty to defend under the eight-corners rule. Thus, since the Policy does not provide coverage for the facts alleged in the state court action, Nautilus does not have a duty to defend Nicky & Claire's and Bustamante. As such, Nautilus similarly does not have a duty to indemnify Nicky & Claire's and Bustamante. Therefore, the Court is of the opinion that the Court's Order of December 1, 2008, continuing Nautilus' Motion for Summary Judgment, be vacated and that Nautilus' Motion for Summary Judgment be granted.

Accordingly, **IT IS HEREBY ORDERED** that the Court's Order of December 1, 2008, continuing Plaintiff Nautilus Insurance Company's "Motion for Summary Judgment" is **VACATED.**

---

**9.** Reyes does not expressly assert that Nicky & Claire's' alleged violation of Human Resources Code § 42.049(b) would result in Nautilus' duty to defend or indemnify Nicky & Claire's. Nevertheless, since Reyes argues that discovery surrounding the issuance of the Policy and the materials provided to the De-

partment of Family and Protective Services presents an issue of material fact, the Court notes that such an argument would be dismissed along similar grounds as Reyes' section 746.5607 argument. Any such violation would not alter the Court's eight-corners analysis.

**IT IS FURTHER ORDERED** that Plaintiff Nautilus Insurance Company's "Motion For Summary Judgment" is **GRANTED.**

**IT IS FINALLY ORDERED** that Plaintiff Nautilus Insurance Company's request for attorney's fees and costs of court is **DENIED.**